Thomas Randall **WOODALL**,
Appellant,

v.

The **STATE** of Texas, State.

No. 2–01–084–CR.

Court of Appeals of Texas,
Fort Worth.

May 2, 2002.

Pete Gilfeather, Fort Worth, for Appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, Asst. Criminal Dist. Atty. and Chief of Appellate Div., David M. Curl, Lisa Callaghan, and Jim Renfroth, Asst. Criminal Dist. Attys., Fort Worth, for Appellee.

Panel A: HOLMAN and WALKER, JJ.; and DAVID L. RICHARDS, J. (Sitting by Assignment).

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Thomas Randall Woodall was convicted of aggravated assault with a deadly weapon and sentenced to twenty years in prison. In five points, Appellant complains the trial court erred in: (1) overruling his motion for mistrial; (2) preventing him from cross-examining the sole eye witness about the witness' prior convictions; (3) overruling Appellant's objection to the admission of hearsay statements made by his wife; (4) overruling his objection and motion for mistrial based on the prosecutor's improper comments during jury selection; and (5) overruling Appellant's oral motion for continuance. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant's wife worked at a topless club, Club Legacy. Appellant attempted to enter the club while intoxicated and a manager, Samuel Procell, refused to allow Appellant in. Appellant pushed Procell aside and entered. After Appellant argued with his wife and tried to get her to leave, Procell told Appellant that he had called the police, and Appellant left.

Later that night, Appellant called the club and demanded to speak to his wife. After Procell told him that she was dancing and that Appellant would have to call back later, Appellant told Procell that he had an "AK–47 waiting on [his] ass." Around midnight, as Procell escorted an employee to her car, he noticed Appellant's car in an adjacent parking lot. He began to walk quickly back into the club, but heard five or six gun shots and was hit.

Waiting in the parking lot was Alton Dean Bishop, whose wife worked as a waitress at the club. Bishop witnessed Appellant shoot Procell, followed Appellant's car, and memorized Appellant's license plate number. The police later found an AK–47 in a dumpster within seventy-five feet of Appellant's motel room and shell casings from the gun in Appellant's car. Appellant was charged with attempted murder and aggravated assault with a deadly weapon, but was only convicted of the latter charge.

## THE PHOTOGRAPHS

In his first point, Appellant argues the trial court erred in overruling the motion for mistrial he filed after learning that several members of the jury viewed photographs that were not in evidence. At trial, as the jury was deliberating, it requested four items of evidence. In the evidence given to the jury, the trial court inadver-

tently included fifty-eight photographs that had not been admitted into evidence. The error was not discovered until the jury foreman handed the bailiff the jury's verdict along with the photographs. The trial court stated that it had ordered the bailiff to give the jury all of the exhibits.

At a hearing during which the trial court brought in each juror one by one, the foreman stated that only he and perhaps the juror next to him had seen two of the photographs, but not the remainder. However, at least six of the other jurors testified as to various photographs they viewed and accurately described the photographs' contents. The photographs seen by the jurors consisted of: (1) a crossbow on the bed in Appellant's motel room; (2) a pistol in the trunk of Appellant's car; (3) a knife in a drawer in Appellant's motel room; (4) an open bag or purse with a pistol inside it; (5) a white tennis shoe with blood on it; and (6) a picture of the outside of the strip club. All twelve jurors testified that the photographs did not influence their verdict. The jurors also testified that they quickly realized the photographs were not marked as exhibits and that they were not to consider them, so they turned them face-down and set them aside. However, the jurors' testimony as to whether or not any comments were made about the contents of the photographs was conflicting. Eight of the jurors stated they did not discuss the contents of the photographs in reaching their verdict, but others testified that some comments were made. One juror who said she did not see any of the pictures stated that a comment was made about an arrow. A second juror stated that someone made a comment to the effect of, "Wow, they have other weapons in the room," and a third juror stated that he remarked, "[t]hat was a big knife."

1. *See Carroll v. State,* 990 S.W.2d 761, 762–63

## Standard of Review

Although Appellant's first point complains only about the trial court's decision to overrule his motion for *mistrial,* Appellant cites a case in support of his argument involving rule of appellate procedure 21.3(f),[1] which provides that a trial court must grant a defendant's motion for *new trial* when, after retiring to deliberate, the jury receives other evidence than that presented at trial. Tex.R.App. P. 21.3(f). Because Appellant seeks review of whether the trial court erred in overruling his motion for mistrial, rather than whether the trial court erred in overruling his motion for new trial, the State argues that Appellant's reliance on the case involving rule 21.3(f) is misplaced.

■ We agree Appellant does not complain about the trial court's decision to overrule his motion for new trial and, therefore, will not decide whether the trial court's decision to overrule the motion for new trial is correct. However, Appellant clearly raises the issue of the jury's receipt of the photographs in his motion for mistrial and on appeal. Furthermore, Appellant raised the issue as one of the grounds in his motion for new trial. Therefore, we regard the cases involving rule 21.3(f) as instructive and will consider them in determining whether the trial court erred in overruling Appellant's motion for mistrial.

■ To obtain relief under rule 21.3(f) the burden is on the defendant to show that (1) the jury "received" evidence that was not admitted during trial, and (2) the evidence was detrimental to the defendant. *Garza v. State,* 630 S.W.2d 272, 274 (Tex. Crim.App. [Panel Op.] 1981); *Jones v. State,* 772 S.W.2d 551, 556 (Tex.App.-Dallas 1989, pet. ref'd). Whether the jury has

(Tex.App.-Austin 1999, no pet.).

received the evidence is a fact question to be decided by the trial court. *Guice v. State,* 900 S.W.2d 387, 389 (Tex.App.-Texarkana 1995, pet. ref'd). The trial court's decision to overrule a motion for new trial will not be disturbed absent an abuse of discretion. *Id.* Moreover, a trial court does not abuse its discretion in overruling a motion for new trial where the testimony of the jurors is conflicting. *Tollett v. State,* 799 S.W.2d 256, 259 (Tex.Crim.App. 1990). At a hearing on a motion for new trial the trial judge is the trier of fact and the sole judge of the credibility of the witnesses. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *Tollett,* 799 S.W.2d at 259.

In *Mayo v. State,* we held that the trial court did not abuse its discretion in determining that the jury did not "receive" additional evidence even though two draft copies of jury charges with several interlineations made by the trial judge and an instruction on the statute of limitations for the offenses charged were inadvertently left in the jury room. 17 S.W.3d 291, 295–96 (Tex.App.-Fort Worth 2000, pet. ref'd). We so held because the jurors testified they did not refer to the copies or consider them as evidence in their deliberations and the trial court found that the incident had no injurious effect or influence on the deliberations. *Id.*

In *Escobedo v. State,* the San Antonio Court of Appeals reviewed the trial court's decision to overrule the defendant's motion for new trial on rule 21.3(f) grounds. 6 S.W.3d 1, 8 (Tex.App.-San Antonio 1999, no pet.). There, Juror Norma DeSoto, stated in her affidavit and testimony that she told the other jurors of her mother's experience with gang vandalism. *Id.* The San Antonio Court of Appeals affirmed the defendant's conviction after holding that the jury did not "receive" the evidence because the foreman of the jury instructed

the other jurors that Juror DeSoto's remarks could not be considered as evidence, and the record did not conclusively show that DeSoto's remarks prejudiced the defendant. *Id.* at 9. The court of appeals relied on the court of criminal appeals' holding that information treated as a "passing remark" does not require reversal. *Id.* (citing *Stephenson v. State,* 571 S.W.2d 174, 176 (Tex.Crim.App. [Panel Op.] 1978)).

Here, although at least six of the jurors testified that they saw one or more of the photographs at issue, all twelve of the jurors unequivocally testified that the photographs had no effect on their verdict because they did not consider the photographs as evidence. The foreman testified:

> I picked up the photographs, and I was looking through them, and I said, "Well, I don't remember this photograph being in evidence."
>
> And somebody said, "Is it marked?"
>
> And I said, "No. There is [sic] a bunch not marked."
>
> We flipped them over and looked at all the ones that were marked without looking at the photographs and separated them and put [the unmarked photographs] aside.

The other jurors corroborated this testimony by indicating that they quickly realized the photographs were not in evidence and that they could not consider them, so they put the photographs face down on another table away from the admitted exhibits. Juror Page testified, "[The Foreman] realized [the photographs] were something that wasn't marked, and he moved them." Juror Albert stated, "When we realized they were not stamped, I grabbed the stack and put if off on the table upside down face down." Juror Jones testified, "Whenever we discovered that they were pictures we had not

seen.... They were immediately gathered up and put aside." Juror Vermeulen testified, "[S]omeone was looking at the pictures, he said, 'Those are not right; let's put them aside.'" Juror Hooper testified, "I just saw they didn't have a sticker and said, 'Oh my gosh.' I turned it over and passed it."

In light of the uncontroverted testimony that the jurors immediately realized they could not consider the pictures as evidence and set them aside, and the uncontroverted testimony that the jurors did not consider the evidence in reaching their verdict, we do not conclude that the trial court abused its discretion in overruling Appellant's motion for mistrial. We overrule Appellant's first point.

### PRIOR CONVICTIONS

■ In his second point, Appellant argues the trial court erred in failing to allow him to impeach a testifying eye witness with prior convictions that were over ten years old. Bishop, the State's only eye witness, was convicted of indecent exposure in 1993, forgery dating back to 1988, and sexual assault dating back to 1982. The trial court stated that it would permit Appellant to question Bishop about the 1993 conviction because it occurred within ten years prior to the trial date, but overruled Appellant's request that the trial court allow him to question Bishop about the two earlier convictions.

■ Rule of evidence 609 provides:

(a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude ... and the court determines that the probative value of admitting this evi-

dence outweighs its prejudicial effect to a party.

(b) **Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

TEX.R. EVID. 609(a), (b). Whether to admit remote convictions lies within the trial court's discretion and depends on the facts and circumstances of each case. *Lucas v. State,* 791 S.W.2d 35, 51 (Tex.Crim.App. 1989); *Jackson v. State,* 50 S.W.3d 579, 591 (Tex.App.-Fort Worth 2001, pets. ref'd).

■ Appellant properly notes, however, that if more than ten years have elapsed, a prior conviction will *not* be held remote if the witness' lack of reformation is shown by evidence of an intervening conviction for a felony or a misdemeanor crime of moral turpitude. *See McClendon v. State,* 509 S.W.2d 851, 855–56 (Tex. Crim.App.1974) (op. on reh'g); *Jackson,* 50 S.W.3d at 591. Evidence of the lack of reformation through subsequent felony and certain misdemeanor convictions may cause the prior conviction to fall outside the general rule and not be subject to the objection of remoteness. *McClendon,* 509 S.W.2d at 855–56; *Jackson,* 50 S.W.3d at 591.

Moral turpitude has been defined to include acts that are base, vile, or depraved. *Searcy v. State Bar of Tex.,* 604 S.W.2d 256, 258 (Tex.Civ.App.-San Antonio 1980, writ ref'd n.r.e). We previously held that one guilty of indecent exposure, by his intent to sexually arouse either himself or

another, acts upon motives of baseness, vileness, and depravity, and that the offense of indecent exposure is therefore a crime of moral turpitude. *Polk v. State,* 865 S.W.2d 627, 630 (Tex.App.-Fort Worth 1993, pet. ref'd). Appellant's subsequent conviction for indecent exposure, because it involved a crime of moral turpitude, removes the taint of remoteness from the older convictions. *See Jackson,* 50 S.W.3d at 591; *Hernandez v. State,* 976 S.W.2d 753, 755 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). Accordingly, we hold that Bishop's 1988 and 1982 convictions are subject to the standard provided in rule 609(a), rather than the more rigorous standard of 609(b).

### Probative Value Versus Prejudicial Effect

Having decided that rule 609(a) applies, we must now determine whether the trial court abused its discretion in finding that the prejudicial effect of Bishop's prior convictions outweighed their probative value. In *Theus v. State,* the court of criminal appeals set out a non-exclusive list of factors courts should use to weigh the probative value of a conviction against its prejudicial effect: (1) the impeachment value of the prior crime; (2) the temporal proximity of the prior crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the charged offense; (4) the importance of the witness' testimony; and (5) the importance of the witness' credibility. 845 S.W.2d 874, 880 (Tex. Crim.App.1992); *Morris v. State,* 67 S.W.3d 257, 264 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

### Factors 1–3: Impeachment Value, Temporal Proximity, and Similarity

 The impeachment value of crimes that involve deception is higher than crimes that involve violence, and the latter have a higher potential for prejudice. *Theus,* 845 S.W.2d at 881. Consequently, when a party seeks to impeach a witness with evidence of a crime relating more to deception than not, this factor weighs in favor of admission. *Id.* The second factor will favor admission of the prior conviction if the past crime is recent *and* the witness has demonstrated a propensity for running afoul of the law. *Jackson,* 50 S.W.3d at 592. The third factor, regarding the similarity between the witness' prior conviction and the current crime for which the witness is on trial, is inapplicable here because Bishop was not being tried for a crime in this case.

### Application of Factors 1–3

 Because Bishop's past conviction for sexual assault is the oldest of his convictions, is not a crime of deception, and is a violent crime, we hold that it was properly excluded. Next we consider Bishop's forgery conviction. The first factor clearly weighs in favor of admitting the prior forgery conviction because forgery is a crime of deception [2] and is not a violent crime.

As for the second factor, although Bishop's convictions tend to show he has a propensity for running afoul of the law, Bishop's forgery conviction is not "recent" because it occurred over fourteen years prior to trial. Accordingly, because the two elements have been set forth in the conjunctive, rather than the disjunctive, this factor weighs against admission. *See id.* (requiring that a conviction be both

---

**2.** *See Solis v. State,* 611 S.W.2d 433, 434 (Tex.Crim.App. [Panel Op.] 1981) (holding that a necessary element of forgery is that an accused have the "intent to defraud or harm another.").

recent *and* demonstrate a propensity for running afoul of the law). Factor three is inapplicable.

**Factors 4 and 5: Importance of the Witness' Testimony and Credibility**

These two factors are related because both depend on the nature of a defendant's defense and the means available to him of proving that defense. *Theus,* 845 S.W.2d at 881. A witness' credibility is less important where other evidence or testimony corroborates the witness' testimony. *See id.* In *Kizart v. State,* the appellant complained that the trial court erred in precluding him from impeaching a testifying witness about his prior conviction for sexual abuse of a child. 811 S.W.2d 137, 140 (Tex.App.-Dallas 1991, no pet.). Because there was "no swearing match" between the witnesses in the case, the court held that the trial court did not abuse its discretion in excluding the prior conviction. *Id.* at 141. In addition to the language in *Kizart,* the holding in *Theus* also appears to support the proposition that where the case boils down to a "he said, she said" situation between two witnesses, with little evidence to tip the scale in either party's favor, each witness' credibility becomes critical to the outcome of the case. *Theus,* 845 S.W.2d at 881 (holding, "When the case involves the testimony of only the defendant and the State's witnesses ... the importance of the defendant's credibility and testimony escalates."). In such situations, courts favor the admission of impeaching evidence. *Id.* (stating, "As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility.").

**Application of Factors 4 and 5**

Here, Appellant's entire theory of the case was that he was not the one who shot Procell. Appellant did not present any witnesses, he merely sought to impeach the State's witnesses and to establish through the State's witnesses that perhaps someone else who held a grudge against Procell was the real shooter.

Bishop testified that he was waiting in the parking lot to pick up his wife around midnight, and noticed a person in a "burgundy-maroon" colored car in the adjacent parking lot of the Howard Johnson Hotel. As he watched Procell walk back into the club after escorting an employee to her car, he heard five or six shots being fired from the car and could see the "muzzle blast" of a gun coming out of the car's window. Bishop followed the car when it fled the scene, got the license plate number, and reported the number to the club because he could not get through to 911. The license plate number, when later checked by the police, showed the car was registered to Appellant's wife. Bishop also testified that, as he pursued the car to get the plate number, he saw the driver of the car, and later identified the driver as Appellant from a photo line up the police showed him the next day.

Bishop was not the only witness for the State. In addition to testifying about Appellant's threats to shoot him with an AK-47, the victim, Procell, testified that just before the shooting, he noticed a "red" car in the parking lot of the Howard Johnson Hotel. Procell stated that he recognized the red car as the same car Appellant had driven out of the parking lot earlier in the evening when Procell had called the police after Appellant forced his way into the club. Procell testified that when he heard several gun shots, he looked back and saw what looked like "red flares" being fired at him from the car. Procell also testified that Appellant's wife came to the hospital to see him that night and was crying and apologizing to Procell, saying, "I'm sorry, I'm sorry. He's not that bad of a guy, you

know." Accordingly, while the most important aspect of Bishop's testimony was to provide the jury with a direct link between the shooter at the crime scene and Appellant, Procell's testimony established a similar link.

Moreover, other evidence established a link between the shooter in the parking lot and Appellant. The police found AK 47 shell casings at the crime scene that matched those found in a red Pontiac Grand Am registered to Appellant's wife that Appellant admitted he had been driving that night. The police also found the gun in a dumpster within seventy-five feet of Appellant's motel room. Appellant admitted that he had argued with Procell on the phone approximately one hour before Procell was shot.

In light of the fact that other evidence buttressed Bishop's testimony, the importance of his testimony and credibility was not as critical as it might otherwise have been. The State's case was very strong even without Bishop's testimony. The case was not a "swearing match" between witnesses for each side. Accordingly, we hold that factors four and five weigh against the admission of the prior convictions.

**Other Considerations—Factor 6: Complaining Party's Ability to Impeach Witness With Other Prior Convictions or Crimes**

Because the court of criminal appeals noted in *Theus* that its list of factors was "non-exclusive," we add a sixth factor to the analysis and consider the effect of Appellant's ability to cross-examine Bishop with other convictions and crimes he committed. We have held that error in precluding a party from presenting evidence of a witness' prior convictions is harmless where the complaining party is allowed to impeach the witness with other prior convictions or crimes. *Smith v. State*, 850

S.W.2d 275, 279 (Tex.App.-Fort Worth 1993, pet. ref'd). Whether the complaining party has been able to impeach a witness in this manner is equally as important in balancing probative value against prejudicial effect as it is to whether error is harmful.

Here, Appellant was allowed to impeach Bishop with both a prior conviction for indecent exposure and a crime he committed the night of the shooting—possession of a marijuana cigarette. Appellant's ability to impeach Bishop with a much more recent conviction for indecent exposure, and to question Bishop about possessing marijuana while he waited in his car for his wife, allowed him to attack Bishop's credibility in front of the jury. Accordingly, we consider this factor equally relevant, and hold that it weighs in favor of excluding Bishop's prior forgery conviction.

Because we have held that five of the six factors we considered weigh in favor of excluding Bishop's prior convictions, we do not agree that the trial court abused its discretion in overruling Appellant's request to admit the convictions. We overrule Appellant's second point.

### EXCITED UTTERANCE

 Appellant asserts in his third point that the trial court erred in overruling his objection to the admission of an excited utterance made by his spouse, Judy or "Jade" Woodall. Jody Nuhn, a police officer who investigated the crime, testified that Judy told him she thought her husband might have been the person who shot Procell because of the altercation between the two earlier in the evening. Appellant timely and properly objected to testimony about Judy's statements, but was overruled on the basis that the statements constituted an excited utterance.

*See* Tex.R. Evid. 803(2).[3] Appellant maintains that Nuhn's testimony about what Judy told him was inadmissible because Judy did not actually view the startling event, but instead, merely stated her opinion based on what other people told her. Because of this, Appellant argues, the statement lacked the proper "indicia of reliability" and was not admissible under the rules of evidence.

### Standard of Review

■ We review the trial court's ruling admitting Appellant's wife's testimony under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim.App.), *cert. denied,* — U.S. —, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001). We "will uphold the trial court's decision if it is within the 'zone of reasonable disagreement.'" *Id.* The excited utterance hearsay exception permits admission of a hearsay "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R. Evid. 803(2); *see McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Couchman v. State*, 3 S.W.3d 155, 159 (Tex.App.-Fort Worth 1999, pet. ref'd). This exception is founded on the belief that statements made as a result of a startling event or condition are involuntary and do not allow the declarant an adequate opportunity to fabricate, thereby ensuring enough trustworthiness to fall outside the hearsay rule. *Hunt v. State*, 904 S.W.2d 813, 816 (Tex.App.-Fort Worth 1995, pet. ref'd).

### Application

The court of criminal appeals has held that an excited utterance can include statements made by a declarant who did not actually view the startling event. In *King v. State*, the court of criminal appeals held that the trial court properly admitted out-of-court statements made to a police officer by Angelita Williams that a black male she knew as King (the appellant) possibly killed the victim in the case. 953 S.W.2d 266, 268 (Tex.Crim.App.1997). Williams did not witness the murder, but based her opinion that Appellant committed it on the fact that she had seen the victim go in and out of the motel room, in which he was found murdered, accompanied by Appellant and another man. *Id.* The officer also testified that Williams was crying profusely and was in an extreme emotional state when she made the statements, which, the court of criminal appeals held, demonstrated Williams was still under the stress of the startling event at the time she made the statements to the police. *Id.* at 269.

Nuhn testified that Judy was "highly upset," "crying and shaking," and "emotional" when she made the statements to him. The record indicates, therefore, that Judy was "under the stress of excitement caused by" the shooting when the police questioned her. Furthermore, much like Williams' statement in *King*, Judy's statement to Officer Nuhn that her husband might have shot Procell was similarly based on her personal observations of events that occurred prior to the startling event. Nuhn testified Judy told him that when Appellant entered the club previously that night against Procell's wishes, he grabbed her arm and tried to get her to leave with him. She refused and Procell intervened, informing Appellant that he had called the police. Judy stated that she thought Appellant might have shot Procell

---

**3.** Appellant actually refers to rule of evidence "809," however, because there is no rule 809 in the Texas Rules of Evidence, and Appellant discusses the excited utterance exception, we construe his argument as one intending to refer to rule 803(2).

because of this earlier incident. Her opinion, therefore, was based on events she personally perceived, even though she did not observe the shooting itself.

As to Appellant's contention that Judy's statements lack reliability, the United States Supreme Court and the court of criminal appeals have clearly held that the reliability of a hearsay statement can be inferred without more when it falls within a "firmly rooted" hearsay exception, such as the excited utterance exception. *See White v. Illinois*, 502 U.S. 346, 355 n. 8, 112 S.Ct. 736, 742 n. 8, 116 L.Ed.2d 848 (1992); *Idaho v. Wright*, 497 U.S. 805, 815, 110 S.Ct. 3139, 3146–47, 111 L.Ed.2d 638 (1990); *Penry v. State*, 903 S.W.2d 715, 751 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 1069, 116 S.Ct. 759, 133 L.Ed.2d 705 (1996). Consequently, we conclude that the trial court did not abuse its discretion in finding that the excited utterance exception applies and that Judy's statements bear adequate indicia of reliability. We overrule Appellant's third point.

### PROSECUTOR'S COMMENTS

■ In his fourth point, Appellant argues the trial court erred in overruling his motion for mistrial based on the State's improper comments during voir dire. The allegedly improper remarks are italicized in the following exchange:

[The State]: Who chooses the victim in an aggravated assault [with a] deadly weapon, Mr. Jones? Who decides who the victim is going to be?

[Venireperson]: I don't know.

[The State]: Well, would it be the Defendant?

[Venireperson]: Well, yeah, the Defendant.

[The State]: *The Defendant decides who to assault. Who chooses the witnesses? Isn't it the Defendant by choos-ing the time and place that the offense occurs?*

[Appellant's Counsel]: Your Honor, I will object to this. She's leaving the jury with the impression that the Defendant in a criminal case is automatically guilty before the case starts. [Emphasis added.]

Though the trial court sustained Appellant's objection, and, upon Appellant's request, instructed the venire panel to disregard the State's last question, it overruled Appellant's motion for mistrial. Appellant relies solely on *Haddad v. State*, 860 S.W.2d 947, 954 (Tex.App.-Dallas 1993, pet. ref'd) for his contention that Appellant's conviction should be reversed because the State "planted a seed" that Appellant was a criminal and thereby prejudiced the jury.

### Standard of Review

■ During voir dire examination, the trial court should allow great latitude to give counsel for both sides "a good opportunity to assess the relative desirability of the venire members." *Orosco v. State*, 827 S.W.2d 575, 577 (Tex.App.-Fort Worth, pet. ref'd), *cert. denied*, 506 U.S. 960, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992) (citing *Battie v. State*, 551 S.W.2d 401, 404 (Tex. Crim.App.1977), *cert. denied*, 434 U.S. 1041, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978)). When reviewing a trial court's ruling on the propriety of a question asked, we will not disturb the ruling absent an abuse of discretion. *Davis v. State*, 894 S.W.2d 471, 474 (Tex.App.-Fort Worth 1995, no pet.). Whether the trial court abused its discretion in denying a motion for mistrial depends on whether the court's instruction to disregard cured any prejudicial effect. *Faulkner v. State*, 940 S.W.2d 308, 312 (Tex.App.-Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). Generally, an instruction to disregard cures the prejudicial effect. *Dinkins v. State*, 894 S.W.2d 330,

357 (Tex.Crim.App.), *cert. denied,* 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).

## Application

The facts of this case are distinguishable from the *Haddad* case upon which Appellant solely relies for this point. There, the State quipped during voir dire, "[I]n my position with the Organized Crime Division, I see things." *Haddad,* 860 S.W.2d at 954. The court based its opinion to reverse the trial court's decision to deny the appellant's subsequent motion for mistrial on the fact that the State's reference to the organized crime division was completely irrelevant to the case because Haddad was not charged with any sort of organized crime offense. *Id.* Because it was not otherwise relevant, the court reasoned, the State's only purpose in referring to organized crime was to inflame the potential jurors by "planting seeds" in their minds that Haddad was somehow tied to organized crime. *Id.*

■ In the present case, immediately after Appellant's motion for mistrial was overruled, the State continued the same line of questioning:

[The State]: Does it make sense to you that a person who is the victim might be a person who has considerable personal problems? They might be someone with a criminal history? They might be someone who has drug abuse problems or someone who works in a— what would you call it—an area that is not very appealing to you? Does that make sense to you?

Is there anyone who feels like those issues would affect them · in deciding whether or not a person was guilty of the offense itself, or do you think you would be willing to accept the victim if you thought they were telling the truth? Do you think you could do that?

When looking at the State's remarks in the context of the record, it appears the State was attempting to locate potential biases among the veniremembers against its witnesses, such as Procell (who tested positive for cocaine at the hospital and who was a manager of the topless club) and Bishop (who was a convicted felon, admitted to being in possession of a marijuana cigarette at the scene, and who's wife worked at the topless club). It does not appear that the State was attempting to "plant seeds" in the potential jurors' minds that Appellant was a criminal. The State had a very relevant reason for asking the veniremembers about their biases in this context—to eliminate jurors who might find the defendant not guilty simply because they considered the lifestyles of the State's witnesses to be morally reprehensible or offensive.

Unlike the State in *Haddad,* therefore, we do not conclude here that the State was attempting to prejudice the jurors against Appellant. Even if the State's remarks were improper, however, they were not so inflammatory that the instruction to disregard failed to cure their prejudicial effect. We overrule Appellant's fourth point.

### Motion for Continuance

■ In his fifth point, Appellant asserts the trial court erred in overruling his oral motion for continuance after the State called a "surprise" witness. Prior to trial, the State voluntarily gave Appellant an informal handwritten list of witnesses it intended to call, but did not include Georgia Covington's name on the list. When the State called Covington to the stand, Appellant objected to her as a surprise witness and complained that the State had omitted her name from the handwritten list it gave to Appellant a few days before.

Outside the presence of the jury, the State explained for the record that Coving-

ton was unavailable for a time and that it did not interview her until after it gave Appellant the handwritten list of witnesses. The State called Appellant's counsel to testify that Covington's name, address, and occupation *was* included in the police report that had been given to Appellant prior to trial. The State later offered for the record a copy of the page of the report containing Covington's information into evidence. Appellant's counsel admitted that he knew the State had intended to call Covington the day before, but did not because she was unavailable due to illness. Appellant argues, however, that Covington failed to give any statement to the police, and that, although her name and address was in the report, he had no way of knowing what her testimony would be.

Appellant recognizes that motions for continuance must generally be in writing, sworn to, and are addressed to the discretion of the trial court. He argues, however, that the motion was an "equitable motion" that was not required to be in writing. He refers to *O'Rarden v. State*, 777 S.W.2d 455, 459 (Tex.App.-Dallas 1989, pet. ref'd) (op. on reh'g), and cases containing language similar to that in *O'Rarden*, which allowed oral motions for continuance based on equitable principles.

We have recently held, however, as have the court of criminal appeals and several of our sister courts, that the line of cases providing an "equitable exception" to the rule that motions for continuances be written and sworn, controverts the plain language of code of criminal procedure articles 29.03 and 29.08, which *require* written and sworn motions for continuance. *See Felan v. State*, 44 S.W.3d 249, 255 (Tex. App.-Fort Worth 2001, pet. filed); *see also* TEX.CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (Vernon Supp.2002); *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex.Crim.App.1999), *cert.*

*denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000); *Dixon v. State*, 64 S.W.3d 469, 472 (Tex.App.-Amarillo 2001, no pet.); *Legate v. State*, 52 S.W.3d 797, 806 (Tex.App.-San Antonio 2001, pet. ref'd); *Mathews v. State*, 40 S.W.3d 179, 186 (Tex.App.-Texarkana 2001, pet. ref'd); *McClinton v. State*, 38 S.W.3d 747, 750 (Tex.App.-Houston [14th Dist.] 2001, pet. granted); *Munoz v. State*, 24 S.W.3d 427, 430 (Tex.App.-Corpus Christi 2000, no pet.).

Accordingly, we decline to follow the *O'Rarden* line of cases that allow for an equitable exception to the rule. We hold that an unwritten, unsworn motion for continuance preserves nothing for review. Having found that Appellant failed to preserve the issue presented in his motion for continuance, we overrule Appellant's fifth point.

## CONCLUSION

Because we have overruled all of Appellant's points, we affirm the trial court's judgment.

WALKER, J. filed a dissenting opinion.

WALKER, Justice, dissenting.

I respectfully dissent. I believe the record before us conclusively establishes that the jury received other evidence during its deliberations and the other evidence was detrimental to Woodall. Accordingly, I would hold that the trial court abused its discretion in refusing to grant Woodall's motion for a mistrial.

Immediately after deliberations began, in response to a note from the jury, the trial court judge ordered the court reporter to send all of the exhibits to the jury room. In addition to the exhibits, the court reporter accidently gathered up and gave the jury fifty-eight crime scene photographs taken by crime scene officers in

this case but never introduced into evidence. The photographs included pictures of a variety of weapons and a bloody tennis shoe. The photographs remained in the jury room with the jury throughout deliberations. When the jury buzzed the bailiff to indicate it had reached a verdict, the foreman returned the exhibits and the fifty-eight photographs to the bailiff. At this point, the trial judge and the lawyers realized for the first time that the court reporter gave fifty-eight unadmitted crime scene photographs to the jury. Before the trial court read or accepted the jury's verdict, Woodall moved for a mistrial, asserting the jury had improperly received "pictures that were taken by the Crime Scene officers which were not introduced into evidence."

Woodall's first issue challenges the trial court's denial of his motion for mistrial. Woodall's motion for mistrial clearly invoked, prior to acceptance of the jury's verdict, the grounds for a post-verdict new trial set forth in rule of appellate procedure 21.3(f). *See* Tex.R.App. P. 21.1, 21.3(f). Thus, the question presented is whether the trial court abused its discretion in denying Woodall's motion for mistrial, i.e., whether the trial court should have granted a pre-verdict new trial, because fifty-eight unadmitted crime scene photographs were provided to the jury.

A new trial must be granted under rule 21.3(f) when: (1) "other evidence" was received by the jury during its deliberations, and (2) that "other evidence" was detrimental to the defendant. *Garza v. State,* 630 S.W.2d 272, 276 (Tex.Crim.App.1981) (op. on reh'g); *Hunt v. State,* 603 S.W.2d 865, 869 (Tex.Crim.App. [Panel Op.] 1980);

*Rogers v. State,* 551 S.W.2d 369, 370 (Tex. Crim.App.1977); *see also Stephenson v. State,* 571 S.W.2d 174, 176 (Tex.Crim.App. [Panel Op.] 1978).[4] We are not to inquire into whether or how the jury's deliberations were affected by this other evidence when these two requirements have been met. *Garza,* 630 S.W.2d at 276. The controlling factor in deciding whether a new trial is required is the character of the evidence, in light of the issues before the jury, not the effect of such evidence on the jurors. *Id.* at 275; *Carroll v. State,* 990 S.W.2d 761, 762 (Tex.App.-Austin 1999, no pet.). If the character of the evidence is such that it would be detrimental to the accused, there is a presumption of injury to the defendant, and it is unnecessary for the accused to prove that the jurors' votes were influenced by the improper evidence. *In re M.A.F.,* 966 S.W.2d at 450 (citing *Garza,* 630 S.W.2d at 274; *Reed v. State,* 841 S.W.2d 55, 59 (Tex.App.-El Paso 1992, pet. ref'd)); *Carroll,* 990 S.W.2d at 762.

The first prong of the *Garza* inquiry is whether other evidence was received by the jury during its deliberations. 630 S.W.2d at 276. The court reporter, an officer of the court, provided "other evidence," fifty-eight crime scene photographs, to the jury at the outset of deliberations. Six of the twelve jurors viewed at least some of the photographs. The trial court specifically found that five of the photographs had been viewed by jurors. Those photographs included pictures of a cross-bow laying on Woodall's hotel room bed, a gun in a red duffle bag, a large knife in a dresser drawer in Woodall's hotel room, a bloody tennis shoe, and the outside marquee of Club Legacy. Moreover, several jurors commented on these

---

**4.** *Garza, Rogers, Hunt,* and *Stephenson* were decided under article 40.03 of the code of criminal procedure, the predecessor statute to rule 21.3(f) of the rules of appellate procedure. The language used in rule 21.3(f) is identical to the language previously set forth in article 40.03. *See In re M.A.F.,* 966 S.W.2d 448, 449 & n. 1 (Tex.1998) (explaining history of rule 21.3(f) of the rules of appellate procedure).

five photographs. One juror commented, "Wow, they [Woodall] have other weapons in the [hotel] room." Another juror remembered a comment "something about an arrow." Another juror admitted he personally commented to the other jurors, "[T]hat was a big knife."

Thus, despite the jurors' testimony, cited by the majority, that they realized the fifty-eight photographs were not in evidence and that they should not consider them, and despite the jurors' testimony that they did not discuss the photographs in reaching their verdict, the record conclusively establishes the contrary. The record establishes that the jurors did not "set aside" the photographs until at least six jurors viewed a total of five photographs and at least three comments were made and heard concerning the contents of the viewed photographs.[5] Therefore, I would hold that the record here conclusively establishes the jury received the five photographs viewed and commented on by jurors. *See In re M.A.F.*, 966 S.W.2d at 450 (holding marijuana cigarette not admitted into evidence but found by juror in pocket of juvenile's jacket that was in evidence was received by jury when discovered during deliberations and viewed by jury); *Garza*, 630 S.W.2d at 275 (holding juror's statements regarding defendant's criminal record made during deliberations were received by jury); *Carroll*, 990 S.W.2d at 762–63 (holding mug shot not admitted at trial but provided to jury and viewed during deliberations was received by jury).

The majority views jurors' testimony that they did not discuss the contents of the photographs in reaching their verdict as conflicting with other jurors' testimony that comments were made concerning the

photographs. Thus, the majority implies that based on this purported conflict in the jurors' testimony, the trial court did not abuse its discretion in denying Woodall's motion for a mistrial. I do not believe the jurors' testimony is conflicting. The jurors who testified that they did not consider or discuss the unadmitted crime scene photographs in reaching their verdict did not deny or dispute that comments were made by jurors during deliberations concerning the content of the unadmitted photographs. These jurors simply failed to characterize the comments as a "discussion." I believe the record conclusively establishes the fact that comments concerning the contents of the unadmitted crime scene photographs were made by jurors during deliberations.

The majority also concludes that the crime scene photographs were not received by the jury because they were the equivalent of a "passing remark" made by a juror during deliberations that is immediately rejected and followed by corrective action. *See Escobedo v. State*, 6 S.W.3d 1, 9 (Tex.App.-San Antonio, no pet.); *Bratcher v. State*, 771 S.W.2d 175, 188–90 (Tex. App.-San Antonio 1989, no pet.); *see also Mayo v. State*, 17 S.W.3d 291, 295–96 (Tex.App.-Fort Worth 2000, pet. ref'd). I cannot agree. The crime scene photographs were provided to the jury under the authority of the court in response to a note from the jury, which automatically gives them a greater indicia of credibility than a comment by a single juror. They were with the jury throughout deliberations. Although the jurors correctly recognized that the crime scene photographs were not in evidence and should be set aside, nonetheless the record conclusively establishes that the jury did not set them

---

5. The trial judge in this case, a visiting judge, questioned the jurors individually from the bench. The sometimes leading questions posed by the court may account for the jurors' reluctance to admit they viewed and discussed the photographs.

aside because six of the twelve jurors viewed some of the photographs and at least three comments were made concerning the photographs' contents. Therefore, the unadmitted photographs here were not immediately rejected and no corrective action by the jury occurred in this case. *Cf. Mayo,* 17 S.W.3d at 295 (recognizing interlineated draft of jury charge accidently left in jury room was rejected by jury when it was "not read or referred to" by jury); *Escobedo,* 6 S.W.3d at 8 (recognizing immediate rejection of other evidence and corrective action by foreman in telling jury to ignore other juror's "off the wall" comment); *Bratcher,* 771 S.W.2d at 189 (recognizing immediate rejection of other evidence and corrective action by foreman pocketing television schedule and admonishing jurors not to consider it). If rejection and corrective action had in fact occurred in this case by the immediate setting aside of the unadmitted photographs, then half of the jury would not have viewed some of the photographs and jurors would not have commented on the contents of the photographs they viewed.

Finally, the trial court here was not afforded the opportunity to instruct the jury not to consider the unadmitted crime scene photographs prior to the jury reaching a verdict. *Cf. Gibson v. State,* 29 S.W.3d 221, 225 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (presuming, when unadmitted police report was accidentally sent to jury room, that jury followed trial court's subsequent instruction to jury to base its verdict only on evidence admitted at trial). Thus, I believe the facts of this case are distinguishable from the cases holding the jury does not receive other evidence when a single juror makes a passing remark that is immediately rejected and followed by corrective action. *See, e.g., Reed,* 841 S.W.2d at 60 (holding juror's comment that accomplice had been previously convicted not received by jury);

*Broussard v. State,* 505 S.W.2d 282, 285 (Tex.Crim.App.1974) (holding juror's comment about crime scene not received by jury).

Instead, this case is similar to, but more compelling than, the *Garza* case. 630 S.W.2d at 273. In *Garza,* five jurors, as opposed to six here, testified a discussion occurred during deliberations concerning appellant's past criminal record and comments were made that appellant should be "put away." All of the jurors testified that on each occasion the appellant's past was brought up, the foreperson or another juror admonished the jury they were not to consider appellant's prior criminal record in determining guilt. *Id.* The jurors testified that appellant's prior criminal record did not influence their decision to find him guilty. *Id.* Nonetheless, the court of criminal appeals held that the jury had erroneously received other evidence after deliberations commenced and that the other evidence was detrimental to the appellant. *Id.* at 275. In accordance with *Garza,* I would hold the record here conclusively establishes that at least five of the unadmitted crime scene photographs, like the comments in *Garza,* were received by the jury.

The second prong of the *Garza* inquiry is whether the other evidence received by the jury during deliberations was detrimental to the accused. 630 S.W.2d at 276. Unadmitted other evidence provided to the jury during deliberations is detrimental to the accused when "reason and common sense can see it was harmful to the accused." *In re M.A.F.,* 966 S.W.2d at 450. Here, reason and common sense dictate that these unadmitted crime scene photographs were harmful to Woodall. Woodall was accused of shooting the victim with an AK–47, not a garden-variety handgun. Common sense dictates that a person who would possess the volume and variety of

weapons pictured in three of the five photographs jurors received and viewed would be more likely than the average citizen to also possess an AK–47. *See In re M.A.F.,* 966 S.W.2d at 450–51 (citing *Bearden v. State,* 648 S.W.2d 688, 693 (Tex.Crim.App. 1983) (holding evidence detrimental to accused when, during deliberations, juror commented on alcohol service policies of defendant nightclub); *Alexander v. State,* 610 S.W.2d 750, 753 (Tex.Crim.App. [Panel Op.] 1981) (holding other evidence detrimental to accused when juror stated during deliberations that he knew accused and that "his character was bad"); *Hunt,* 603 S.W.2d at 868–69 (holding evidence was detrimental to accused when, during deliberations, juror speculated on details of murder based on his Marine Corps training); *Stephenson,* 571 S.W.2d at 176 (holding other evidence detrimental to accused when, during deliberations, juror claimed to know facts personally and other jurors claimed to have personal knowledge that one witness was not truthful); *Shivers v. State,* 756 S.W.2d 442, 444 (Tex.App.-Houston [1st Dist.] 1988, no pet.) (holding other evidence detrimental to accused when jury foreman drove to crime scene during deliberations and reported to the jury that eyewitness's view was not obstructed by tree)). Thus, looking to the character of the other evidence provided to the jury, in light of the issues before the jury, I would hold that: three of the five crime scene photographs received and viewed by the jury were detrimental to Woodall, a presumption arose of injury to Woodall, and Woodall was not required to prove that the jurors' votes were influenced by the improper evidence. *See In re M.A.F.,* 966 S.W.2d at 450 (citing *Garza,* 630 S.W.2d at 274; *Reed,* 841 S.W.2d at 59). Accordingly, I would hold that the trial court abused its discretion by denying Woodall's motion for a mistrial.

The State contends that, in any event, the error in allowing the jury to view the unadmitted crime scene photographs was harmless because the State's case was overwhelmingly strong. The State asserts that rule 44.2(a)'s constitutional harm analysis should apply to this error. *See Carroll,* 990 S.W.2d at 763 (assuming the constitutional error analysis applied to a rule 21.3(f) error). Assuming the constitutional error standard applies, I am unable to determine beyond a reasonable doubt that the jury's receipt of the three crime scene photographs showing weapons in Woodall's hotel room did not contribute to Woodall's conviction or punishment. I would hold that, assuming rule 44.2's harm standard applies, a new trial is required.

Because I believe that the record before us conclusively establishes other evidence was received by the jury during its deliberations and was detrimental to Woodall, I would sustain Woodall's first point, reverse the trial court's judgment, and remand this case to the trial court for a new trial.