Opinion issued January 26, 2012

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00885-CR

———————————

Sabino Alarado Duarte, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 184th District Court

Harris County, Texas



Trial Court Case No. 1237019

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Sabino Alarado
Duarte, of the felony offense of possession with the intent to deliver between
200 and 400 grams of a controlled substance, cocaine, and assessed punishment
at twelve years’ confinement and a $7,000 fine.[1]  In one issue, appellant contends that the
trial court erred in refusing to allow defense counsel to impeach a State
witness with a remote prior conviction for misdemeanor forgery.

          We
affirm.

Background

          On
October 13, 2009, Houston Police Department (“HPD”) Narcotics Division Officer
M. Valles worked with Rene Garcia, a confidential
informant, in an attempt to purchase a half kilogram of cocaine.  Garcia had previously negotiated the
potential transaction with Jonathan Luna, his neighbor and appellant’s
co-defendant.  Officer Valles met Garcia at his house and waited for Luna to
arrive.  After Luna arrived, Officer Valles and Garcia asked him whether he could obtain a half kilogram
of cocaine, and he replied, “Yes.  I just
got to make a call.”  After Luna
confirmed that he could obtain the requested amount of cocaine, Officer Valles told him that they would have to go somewhere else
to see the money for the purchase.  Officer
Valles drove Garcia and Luna to a nearby Fiesta
parking lot and summoned another undercover officer who provided the funds for
Luna to inspect.  After Luna counted the
money, he made a phone call to an unknown person and stated, “Hey, the money,
it’s all here.  It is good.  They are asking for half a kilo.”

          Officer
Valles then drove Garcia and Luna to a Valero station
off of Loop 610 and parked directly in front of the entrance to the convenience
store.  After waiting for a few minutes,
both Officer Valles and Garcia got out of the car.  They then saw another car, driven by
appellant, pull into the gas station.  Officer
Valles was standing outside the entrance to the gas
station when appellant arrived, and he walked inside as appellant parked next
to his vehicle.  Officer Valles stood inside the store by a window, which allowed
him to view the entire parking lot of the gas station.  He testified that he had a “good view” of his
car and appellant’s car.

          After
appellant parked, Luna climbed into the front passenger seat of appellant’s
car.  From inside the store, Officer Valles observed appellant pull the radio out from the center
console of his car.  Appellant reached
into the dashboard, pulled out a light-colored bag, and handed it to Luna, who
looked inside the bag.  Luna then called
Garcia over to appellant’s car, and Garcia looked into the bag.  Garcia gave Officer Valles
the “bust signal,” and Valles notified the backup
units.  After Officer Valles
notified the other officers, he saw Luna hand the light-colored bag back to
appellant, who put the bag back inside the dashboard and replaced the
radio.  Once appellant and Luna were in
custody, Garcia told Valles, “It’s behind the radio.”

          Two
other officers, Officer M. Sinegal and Officer B.
Davis, searched appellant’s car, removed the radio, and discovered the light-colored
bag, which held a plastic bag containing what appeared to be cocaine.  Officer Valles
testified that Officer Sinegal handed him the light-colored
bag, and he opened the bag and observed the substance, which later field-tested
positive as cocaine.[2]  He identified one of the State’s exhibits, a
light-colored bag, as the same bag that he observed Luna handling before the
raid and that Officer Sinegal handed to him after the
search of appellant’s car.

          Officer
Sinegal testified that he arrived at the Valero
station as other officers were removing appellant and Luna from appellant’s
vehicle.  His duty at the scene was to
locate the narcotics in appellant’s vehicle. 
Officer Valles informed him that the drugs
were possibly located behind the radio.  Officer
Sinegal testified that, after he and Officer Davis
removed the radio in appellant’s car, they discovered a flap in the
dashboard.  They opened the flap and found a “beige to gold colored bag” inside.  Officer Sinegal
removed the bag, opened it, and “observed a white chunk substance that appeared
to be cocaine.”  He then handed the bag
over to Officer Valles.

          Garcia
testified that he has been a confidential information
for HPD and other law enforcement agencies for over eight years.  Several days before October 13, 2009, the
date the officers arrested appellant and Luna, Garcia approached Luna, whom he
knew from around his neighborhood, and told him that he had a friend who was
interested in purchasing a half kilogram of cocaine.  Luna responded that he had a friend who could
obtain the drugs and told Garcia that he would contact his friend and let
Garcia know about a price.  Garcia
testified that Luna spoke to an unidentified person on the phone and then
informed Garcia that a half kilo would cost $14,000 and that the transaction
would occur at Garcia’s house the next day, October 12, 2009.  Garcia stated that Luna, appellant, and two
women arrived at his house on the evening of October 12 with the requested cocaine.  That day, Garcia was working with officers
other than Officer Valles, and no transaction
actually occurred on October 12.  Garcia
testified that the cocaine was contained in a light brown bag and that, before
Luna and appellant left his house, he saw them “maneuvering” with the bag
around the dashboard of appellant’s car. 
Garcia spoke with Luna later that evening, and Luna told him that the
police had stopped appellant’s vehicle but failed to find any contraband.  The next day, on October 13, Garcia saw Luna
and they agreed to conduct the transaction later that afternoon.

          Garcia
testified that, when Luna arrived at his house, Luna spoke with Officer Valles about the transaction and they agreed to meet at
another location so Luna could count the money. 
Garcia testified similarly to Officer Valles
regarding the events that occurred at the Fiesta parking lot.  After Luna counted the money, Garcia heard
him make a call to an unidentified person and ask where to meet.

          When
they arrived at the Valero station, all three men got out of Officer Valles’s car to wait. 
Garcia testified that, after appellant arrived, Luna climbed into the
front passenger seat and Garcia stood next to the front passenger window of
appellant’s car.  He stated that he asked
appellant if “he had brought the material,” and, after appellant responded that
he had, appellant began removing the radio. 
Appellant then reached into the dashboard and pulled out a brown cloth
bag.  Appellant opened the bag, and
Garcia observed cocaine inside the bag.  Garcia
asked appellant to put the bag back in the dashboard “because [Garcia] wanted
to see exactly how [appellant] had [removed it from the dashboard].”  Garcia then gave Officer Valles
the pre-arranged bust signal.  After the
officers arrived, Garcia informed them of where the drugs were located in
appellant’s car.

After a recess during his
cross-examination of Garcia, defense counsel asked the trial court to allow him
to impeach Garcia using a 1999 conviction for misdemeanor forgery, a crime of
moral turpitude.  Defense counsel
acknowledged that Garcia was released from confinement for the conviction more
than ten years before appellant’s trial, but he argued that the conviction was
admissible “because it is so crucial to [Garcia’s] credibility in this case.”

 

The trial court responded:

If [Garcia] has gone 10
years without a conviction, I don’t find [the forgery conviction]
relevant.  That’s not very
probative.  So, I find that the
prejudicial value to the State outweighs the probative value.

 

The trial court refused to allow defense counsel to
question Garcia about his prior forgery conviction.

          Appellant
called only one witness on his behalf: 
Alberto Gonzales, a childhood friend. 
Gonzales testified that he was with appellant and Luna on the night of
October 12, 2009.  According to Gonzales,
he, appellant, Luna, one of Luna’s male friends, and an unidentified woman all
drove to Garcia’s house to drink a few beers.[3]  Gonzales testified that he did not see
appellant in possession of any cocaine on this evening and that they did not
converse about drugs while at Garcia’s house. 
Gonzales did not testify regarding any events that occurred on October
13, 2009, the day appellant and Luna were arrested at the Valero station.

          The
jury found appellant guilty of possessing, with the intent to deliver, between
200 and 400 grams of a controlled substance and assessed punishment at twelve
years’ confinement and a $7,000 fine. 
This appeal followed.

Standard of Review

          We
review a trial court’s decision to exclude evidence for an abuse of
discretion.  Martinez v. State, 327 S.W.3d 727, 736
(Tex. Crim. App. 2010).  A trial
court abuses its discretion only if its decision is “so clearly wrong as to lie
outside the zone within which reasonable people might disagree.”  Taylor
v. State, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d). 
A trial court does not abuse its discretion if any evidence supports its
decision.  See Osbourn v. State, 92
S.W.3d 531, 538 (Tex. Crim. App. 2002). 
If the trial court’s decision is correct on any theory of law applicable
to the case, we will uphold the decision. 
De La Paz v.
State, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Admissibility of Remote Prior Conviction

          In
his sole issue on appeal, appellant contends that the trial court erred in
refusing to allow defense counsel to impeach the credibility of Rene Garcia
with his 1999 conviction for misdemeanor forgery because, although Garcia’s
conviction was remote, the probative value of this conviction substantially
outweighed its prejudicial effect because of the importance of Garcia’s
testimony.

          Texas
Rule of Evidence 609(a) provides that evidence of a witness’s prior conviction
shall be admitted for impeachment purposes if the crime was a felony or a crime
of moral turpitude and the court determines that the probative value of the
conviction outweighs its prejudicial effect. 
Tex. R. Evid.
609(a); Morris v. State, 67 S.W.3d
257, 263 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  This evidence is not admissible, however, if
more than ten years have passed from the date of conviction or the date of the
witness’s release from confinement, whichever is later, unless the court
determines, in the interest of justice, that the probative value of the
conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.  Tex.
R. Evid. 609(b) (emphasis
added); Morris, 67 S.W.3d at 263; Jackson v. State, 11 S.W.3d 336, 339
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).  A proponent of impeachment evidence pursuant
to Rule 609 “has the burden of demonstrating that the probative value of a
conviction outweighs its prejudicial effect.” 
Theus v. State, 845 S.W.2d
874, 880 (Tex. Crim. App. 1992).

          Remote
convictions are generally inadmissible because we presume that a witness is
capable of rehabilitation and that his character has reformed over a period of
law-abiding conduct.  Morris, 67 S.W.3d at
263.  We may find, however, that,
although a prior conviction is more than ten years old, later convictions for
felonies or misdemeanors involving moral turpitude remove the taint of
remoteness from the prior conviction.  Id. (citing Hernandez v. State, 976 S.W.2d 753, 755 (Tex. App.—Houston [1st
Dist.] 1998, pet. ref’d)).  In that situation, we apply the Rule 609(a)
“outweigh” standard—instead of
Rule 609(b)’s “substantially outweigh” standard—because “the ‘tacking’ of the intervening convictions renders convictions
more than 10 years old no longer remote.” 
Id.  “[I]ntervening
convictions for felonies or crimes of moral turpitude demonstrate a lack of
reformation, attenuating the possible prejudice interposed by a distant
conviction.”  Id.

          Here,
the record contains no indication that Garcia has any convictions other than
his 1999 conviction for misdemeanor forgery, and both parties agreed that
Garcia was released from confinement for this offense more than ten years
before appellant’s trial.  Thus, because
Garcia does not have any “intervening” convictions for felonies or misdemeanors
involving moral turpitude, we determine whether the trial court abused its
discretion in excluding the evidence of his 1999 misdemeanor forgery conviction
under Rule 609(b)’s “substantially outweighs” standard.  See
Jackson, 11 S.W.3d at 339 (“Under rule 609(b), if the prior conviction was
more than 10 years before trial, the probative value of the prior conviction
must substantially outweigh the prejudicial effect and not simply outweigh the
prejudicial effect, as under rule 609(a).”).

          In Theus, the Court
of Criminal Appeals set forth a non-exclusive list of factors to use when
weighing the probative value of a conviction against its prejudicial
effect:  (1) the impeachment value of the
prior crime, (2) the temporal proximity of the past crime relative to the
charged offense and the witness’s subsequent criminal history, (3) the
similarity between the past crime and the offense being prosecuted, (4) the
importance of the witness’s testimony, and (5) the importance of the witness’s
credibility.  845
S.W.2d at 880.

          Past
crimes that involve deception have greater impeachment value than past crimes
involving violence, which have a higher potential for prejudice.  Id.
at 881; Morris, 67
S.W.3d at 264.  Thus, when a party
“seeks to impeach a witness with evidence of a crime that relates more to
deception than not, the first factor weighs in favor of admission.”  Theus, 845 S.W.2d at 881; see also Urtado v. State, 333 S.W.3d 418,
428 (Tex. App.—Austin 2011, pet. ref’d) (“In
identifying non-violent crimes that constitute moral turpitude, courts have
typically focused on whether the crime involved deception, as past deceptive
conduct is relevant to a witness’s credibility.”).  Forgery is a crime of deception and not of
violence.  Woodall v. State, 77 S.W.3d 388, 395 (Tex. App.—Fort Worth 2002,
pet. ref’d); see
also Solis v. State, 611 S.W.2d 433, 434 (Tex. Crim. App. 1981) (holding
that necessary element of forgery is that defendant have “intent to defraud or
harm another”).  Here, Garcia was
previously convicted of misdemeanor forgery, a crime involving deception.  Thus, this factor weighs in favor of
admitting evidence of the prior conviction. 
See Woodall, 77 S.W.3d at 395.

          The
second Theus
factor, temporal proximity, favors admissibility “if the past crime is recent
and if the witness has demonstrated a propensity for running afoul of the
law.”  Theus, 845
S.W.2d at 881.  Here, Garcia was
convicted of misdemeanor forgery in 1999, more than ten years before
appellant’s trial.  The record contains
no indication that Garcia had any “intervening” convictions after his forgery
conviction.  Thus, because the past crime
was not recent and Garcia has not “demonstrated a propensity for running afoul
of the law,” this factor weighs against admission of the prior conviction.  See
Woodall, 77 S.W.3d at 395 (noting that two parts of this Theus factor
“have been set forth in the conjunctive, rather than the disjunctive,” and,
thus, because witness had several prior convictions, demonstrating a
“propensity for running afoul of the law,” but conviction at issue was not
recent, this factor weighed against admission).

          The
third Theus
factor weighs against admissibility if the past crime and the charged offense
are similar because the similarity “presents a situation where the jury would
convict on the perception of a past pattern of conduct, instead of on the facts
of the charged offense.”  Theus, 845 S.W.2d at 881.  When,
as here, the witness sought to be impeached is not the defendant, we modify
this factor to examine the similarity between the past crime and any conduct of
the witness at issue in the present trial. 
Moore v. State,
143 S.W.3d 305, 313 (Tex. App.—Waco 2004, pet. ref’d).  Here, Garcia’s past crime involved forgery,
while, in the present case, he acted as a “middle man” by arranging the drug
transaction at issue with Luna, and he was an eyewitness to appellant’s
possession of the drugs during the attempted transaction.  Because there is little similarity between
Garcia’s past crime and his conduct here, admission of the prior forgery conviction
carries little danger of unfair prejudice on this basis.  This factor, therefore, weighs in favor of
admission of the prior conviction.  See id. (“The third factor focuses on
the potential for unfair prejudice due to similarity of past conduct with the
conduct at issue in the present litigation. 
The absence of similarities between Hauerland’s
theft convictions and his conduct on the occasion in question indicates no
significant danger of unfair prejudice on this basis.”).

          The
final two Theus
factors, the importance of the witness’s testimony and the importance of the
witness’s credibility, are related because “both depend on the nature of a
defendant’s defense and the means available to him of proving that
defense.”  Theus, 845
S.W.2d at 881.  As the importance
of the witness’s testimony increases, so does the need to allow the opposing
party to impeach the witness’s credibility. 
Id.  A witness’s credibility is less important
where other evidence or testimony corroborates the witness’s testimony.  Woodall,
77 S.W.3d at 396 (citing Theus,
845 S.W.2d at 881); Moore, 143 S.W.3d
at 313 (“Hauerland’s testimony was important to the
State’s case but not essential because other witnesses corroborated much of his
testimony.  For the same reason, Hauerland’s credibility was important but not a critical issue
at trial due to the presence of other witnesses who provided similar
testimony.”).  “[W]here
the case boils down to a ‘he said, she said’ situation between two witnesses,
with little evidence to tip the scale in either party’s favor, each witness’ credibility
becomes critical to the outcome of the case.” 
Woodall, 77
S.W.3d at 396.  In these
situations, courts favor the admission of the impeaching evidence.  Id.

          Here,
Garcia was not the only State’s witness who testified regarding the attempted
drug transaction on October 13, 2009. 
Officer Valles also testified, and his
testimony corroborated Garcia’s account of events.  Both men testified that they met Luna at
Garcia’s house, drove to a Fiesta parking lot to allow Luna to count the money,
and drove to a Valero station to wait for appellant to arrive with the cocaine.  Officer Valles and
Garcia also both testified that, as they waited for appellant, all three men
got out of Valles’s car and Valles
was standing near the doors to the convenience store when appellant arrived.  They both testified that, after appellant
parked next to Valles’s car, Luna climbed into the
front passenger seat of appellant’s car, and appellant removed the car’s radio,
reached into the dashboard, and pulled out a light brown bag.  Officer Valles
testified that he saw appellant and Luna show the contents of the bag to
Garcia, and Garcia testified that the bag contained cocaine.  Officer Valles and
Garcia both testified that Garcia gave the bust signal, appellant placed the
bag containing the cocaine back inside the dashboard and replaced the radio,
and, after appellant and Luna were in custody, Garcia told the raid-team
officers that the drugs were behind the radio. 
Both Officer Valles and Officer Sinegal, who searched appellant’s car, confirmed that a
cloth bag containing cocaine was located behind the radio in appellant’s car.[4]

          Because
Garcia’s testimony regarding the transaction was corroborated by the testimony
of both Officer Sinegal and Officer Valles, who was also an eyewitness to the events leading up
to the attempted transaction, and because appellant’s only witness did not
contradict Garcia’s account of the events of October 13, Garcia’s testimony and
credibility is less important than if he were the sole State witness and if his
testimony was disputed by appellant.  See Woodall, 77 S.W.3d at 396, 397 (“The
case was not a ‘swearing match’ between witnesses for each side.”).  Because the importance of Garcia’s testimony
and credibility “was not as critical as it might otherwise have been,” we
conclude that the fourth and fifth Theus factors weigh against admission of Garcia’s prior
conviction.  See id. at 397.

          Thus,
although the first and third Theus factors—the impeachment value of Garcia’s prior conviction and the dissimilarity
of Garcia’s conduct in the past crime and the current case—both weigh in favor of admission, the remaining
Theus
factors weigh against admission.  We
therefore conclude that appellant has not established that the probative value
of Garcia’s prior conviction substantially
outweighs the prejudicial effect of the conviction, as he is required to
prove under Rule 609(b).  See Tex.
R. Evid. 609(b); Jackson, 11 S.W.3d at 339 (requiring proponent of remote conviction
to prove, when witness does not have “intervening” convictions, that probative
value of prior conviction substantially outweighs, as opposed to just
outweighs, prejudicial effect).  We hold
that the trial court did not abuse its discretion by refusing to allow
appellant to impeach Garcia with his remote prior conviction for misdemeanor
forgery.

          We
overrule appellant’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                      Evelyn
V. Keyes

                                                                      Justice


 

Panel
consists of Justices Keyes, Bland, and Sharp.

Do
not publish.   Tex. R.
App. P. 47.2(b).











[1]
        See Tex. Health & Safety
Code Ann. §§ 481.102(3)(D), 481.112(e)
(Vernon 2010).





[2]
        HPD criminalist Jackeline Hamelius testified that
the bag removed from appellant’s car contained 243.9 grams of cocaine,
including adulterants and dilutants.





[3]
        Gonzales testified that he did not
know Garcia and that they were not specifically introduced.





[4]
        Alberto Gonzales, appellant’s only
witness, did not contradict the State’s account of what occurred on October 13,
2009.