Affirmed and Memorandum Opinion filed September 11, 2003









Affirmed
and Memorandum Opinion filed September 11, 2003.

 

 

 

                                                                                                                                                            

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00339-CR

NO. 14-02-00340-CR

____________

 

DANIEL LOPEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th District Court

Harris County, Texas

Trial Court Cause No. 887,743 &
887,742

 



 

 M E M O R A N D U M   O P I N I O N

Appellant
Daniel Lopez was convicted by a jury of two counts of felony theft.  In seven points of error, appellant claims:
(1) the evidence is factually insufficient to support the two convictions; (2)
there is insufficient evidence to corroborate the accomplice=s
testimony; (3) the State asked improper commitment questions during voir dire; (4) the trial court erred in denying appellant=s
request to conduct a voir dire examination of a
witness; (5) the State made improper statements about appellant=s
prior conviction, and (6) during closing argument, the State improperly
attempted to shift the burden of proof. 
We affirm.








Background

On
August 28, 2001, 1200 processors were stolen from the high value parts section
of TNT, Compaq Computer Company=s raw materials warehouse.  On August 30, 2001, 3000 additional
processors were stolen from the same location. 
Compaq investigator James Hathaway testified that the stolen processors
were valued at $793,000.  

The
warehouse had a complex security system that required all drivers to log in for
pick-up of high-end parts.  Each truck
making a pick-up received an inbound ticket that detailed the date and time of
arrival.  The ticket also contained
information regarding the carrier, rig and trailer number, and the driver=s
name and license number.  The warehouse
also maintained an inbound trailer log containing the same information.  Inventory control documents track the goods
and are signed by the TNT employee and the driver taking delivery.  Appellant, a driver for the
trucking company USF Dugan, made frequent cargo pick-ups at the warehouse.  Appellant=s accomplices, Spencer Miller, and
Bernard Olewe worked at the TNT warehouse.  

Factual
Sufficiency








In
his first and second points of error, appellant claims the evidence is
factually insufficient to support his two convictions for theft.  We conduct a factual sufficiency review by
asking whether a neutral review of all the evidence demonstrates the proof of
guilt is so obviously weak as to undermine confidence in the jury=s
determination or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  We may set
aside the jury=s verdict only if it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust.  Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Although we review the
fact finder=s weighing of the evidence, and we
are authorized to disagree with the fact finder=s determination, our evaluation should
not substantially intrude upon the fact finder=s role as the sole judge of the
weight and credibility given to witness testimony.  Johnson, 23 S.W.3d
at 7.  In particular, we must
defer to the jury=s determination concerning what
weight to give contradictory testimonial evidence because resolution often
turns on an evaluation of credibility and demeanor, an evaluation better suited
for jurors who were in attendance when the testimony was delivered.  Id. at 8.

Here,
the State presented sufficient evidence to convict appellant on both counts of
theft.  First, accomplice Spencer Miller
testified that he, appellant, and Bernard Olewe
planned the thefts.  Both Miller and Olewe worked at TNT and solicited appellant because he
drove for USF Dugan trucking, which regularly serviced the warehouse.  On August 28 and 30, Miller loaded appellant=s
USF Dugan truck at the TNT facility with a large shipment of processors.  Appellant then left TNT with the
processors.  Miller was unsure where
appellant took them, but testified Olewe had arranged
for a buyer to purchase the stolen merchandise. 
Olewe paid Miller $50,000 for his role in the
theft.  Miller shared this sum with
appellant.  

In
addition to Miller=s testimony, other evidence supports
appellant=s conviction.  The TNT warehouse had extensive security
procedures that required its personnel to keep detailed information about who
made deliveries and picked up orders. 
Specifically, security personnel tracked truck entry, arrival at the
high value area, and all exits from the compound.  Appellant worked for USF Dugan, which made frequent
pick-ups at the facility.  Warehouse
documentation showed a USF Dugan truck picked up the stolen property.  Further, the August 30 sign-in documents
showed the driver as a D. Lopez with driver=s license 16300102 and trailer
number 13081.  Appellant=s
license is 10300102 and his assigned tractor number was 13081.  Two TNT security officers, one from each
date, identified appellant from a photo spread as the driver of the truck that
picked up the stolen property.  The State
also presented evidence that appellant was undertaking an extensive remodeling
effort on his home, indicating that he might recently have received a large
influx of money.








Appellant points to both documentary
and testimonial evidence to support his contention that the evidence is
factually insufficient to support the conviction. 
For the August 28 thefts, appellant argues the shipping documents fail
to link him to the theft.  The authorization
slip, outbound order, packing list, and outbound checklist contained no
connection to appellant other than through Miller=s testimony and signature.  However, the authorization form and bill of
lading are tied to USF Dugan, the carrier for which appellant works.  Documents also show that the August 28 driver
was AThomas
Garza,@
driving trailer 5873 and arriving at TNT at 10:02 a.m.  Appellant began work at 9:33 a.m. that day
and was assigned trailer 5873.  

Appellant
also points to the inability of warehouse employees to identify him in court as
the USF truck driver on either August 28 or 30. 
For the August 28 theft, neither the Burns security
supervisor, the warehouse supervisor, inbound gate security guard, nor the
warehouse supervisor could identify appellant as the truck driver.  The Burns security officer, Geraldine Wilson,
selected appellant from a photo spread as the August 28 truck driver, but
failed to identify him in court.

Warehouse
personnel were also unable to identify appellant as the August 30 driver.  The main gate security guard, Cornelio
Medina, tentatively identified appellant from a photo spread, but did not make an identification in court. 
Medina also wrote down the driver=s license number as 10300102 when
appellant=s is 16300182.  However, Medina described the driver=s
license as Akind of old@
and having a black smudge on the left hand corner.  In addition, he testified the licence photo looked like the truck driver.

Finally,
appellant points to his own testimony in support of his argument that the
evidence is factually insufficient.  He
testified that he did not know Spencer Miller and could not explain why Miller
and Olewe=s phone numbers were on his cell
phone.  In addition, he claimed the
remodeling was only of his kitchen cabinets and he had purchased only wood for
the job.  He denied having visited the
TNT warehouse or stealing any of the processors.








Although
there were no positive in-court identifications, we conclude that the State
presented factually sufficient evidence to the jury to show that appellant
committed the theft offenses.  Accomplice
testimony, cell phone records, warehouse documents, and other testimonial
evidence connect appellant to the trucking company, the warehouse on the days
of the theft, and with the admitted accomplice. 
Therefore, appellant=s first and second points of error
are overruled.   

Corroboration
Evidence

In
his third point of error, appellant claims the evidence was insufficient to
corroborate the accomplice testimony of Spencer Miller.  AA conviction cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to
connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense.@
 Tex. Code of Crim. Proc. Ann. art. 38.14
(Vernon 1979).  The evidence need
not directly connect the defendant to the crime or Athat
it be sufficient by itself to establish guilt; it need
only tend to connect the defendant to the offense.@  Cathey v.
State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999)
(citing Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim.
App. 1988)).  AIf
the combined weight of the non-accomplice evidence tends to connect the
defendant to the offense, the requirement of Article 38.14 has been fulfilled.@  Id. (citing Gosch
v. State, 829 S.W.2d 775, 777 (Tex. Crim. App.
1991)).








AThe test for sufficient
corroboration is to eliminate from consideration the accomplice testimony and
then examine the other inculpatory evidence to
ascertain whether the remaining evidence tends to connect the defendant with
the offense.@ 
Burks v. State, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994). 
In applying the test for sufficiency, each case must be considered on
its own facts and circumstances.  Reed
v. State, 744 S.W.2d 112, 126 (Tex. Crim. App.
1988) (citing Mitchell v. State, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983)). 
All the other facts and circumstances in evidence may be looked to as
furnishing the corroboration necessary.  Id.
(citing Brown v. State, 561 S.W.2d 484 (Tex. Crim.
App. 1978)).  The corroborative evidence
may be circumstantial or direct.  Id.  The combined cumulative weight of the
incriminating evidence furnished by the non-accomplice witnesses that tends to
connect the accused with the commission of the offense supplies the test.  Mitchell v. State,
650 S.W.2d 801 (Tex. Crim. App. 1983).  It is not necessary that the corroboration
directly link the accused to the crime or be sufficient in itself
to establish guilt.  Vasquez
v. State, 67 S.W.3d 229, 236 (Tex. Crim. App.
2002).  

In
the absence of the accomplice=s testimony, the State still
presented sufficient evidence to convict appellant.  As stated previously, evidence placed
appellant at the warehouse on the dates in question.  Cell phone records revealed calls to the
accomplices and warehouse.  Even in the
absence of accomplice testimony explaining the theft scheme, the evidence
directly linked appellant to the crime. 
Independent evidence corroborated appellant=s
presence at the scene on the dates in question when there was
no scheduled pick-ups or deliveries.  On
August 28, warehouse documents recorded a USF Dugan carrier with a trailer
number registered to appellant.  On
August 30, warehouse documents showed D. Lopez signing in with the rig number
assigned to him.  This evidence tends to
connect appellant with the crime such that it sufficiently corroborates the
accomplice testimony.  We overrule
appellant=s third point of error.

Improper
Commitment Questions During Voir
Dire

In
his fourth point of error, appellant claims the State conducted an improper voir dire by attempting to commit the jury to a particular
verdict using a hypothetical fact pattern that was factually specific to this
case.  See Standefer
v. State, 59 S.W.3d 177, 181 (Tex. Crim. App.
2001) (prohibiting improper commitment questions).  An attorney=s questioning during voir dire is proper if it seeks to discover a juror=s
views on an issue applicable to the case. 
See Smith v. State, 703 S.W.2d 641, 643
(Tex. Crim. App. 1985).  In this case, the prosecutor asked, Ado
you think you would be okay deciding beyond a reasonable doubt based on
paperwork, based on records?@ and Aif
you believe that circumstantial evidence beyond a reasonable doubt that would
require more, require that eyewitness. . .@. 
The court sustained defense counsel=s objection and gave an instruction
ordering the jury to disregard the prosecutor=s questions.  Appellant=s motion for mistrial was
denied.  The issue, therefore, is not
whether the State=s voir
dire questions called for improper commitment, but whether the instruction to
disregard cured any taint.








The
voir dire examination allows counsel to assess the
desirability of venire members and to select a Acompetent, fair, impartial, and
unprejudiced jury.@ 
Staley v. State, 887 S.W.2d 885, 896-97 (Tex. Crim.
App. 1994), cert. denied, 514 U.S. 1020 (1995); see also Woodall v.
State, 77 S.W.3d 388, 399 (Tex. App.CFort Worth 2002, pet. ref=d)
(reviewing instruction to disregard improper voir
dire examination).  When reviewing a
trial court=s ruling on the propriety of a
question asked, we will not disturb the ruling absent an abuse of
discretion.  Woodall, 77 S.W.3d at
399 (citing Davis v. State, 894 S.W.2d 471, 474 (Tex. App.CFort Worth 1995, no pet.)); Fuller v. State,
1998 WL 548709, *10 (Tex. App.CDallas
1998, pet. ref=d); see also Davila v. State,
2003 WL 21404087, *3 (Tex. App.CAmarillo
2003) (memorandum opinion) (applying Tex.
R. App. Proc. 33.1 to appeal challenging commitment questions); Schumacher
v. State, 72 S.W.3d 43, 47 (Tex. App.CTexarkana 2001, pet. ref=d)
(applying rule to comment during voir dire).   Whether the trial court abused its
discretion in denying a motion for mistrial depends on whether the court=s
instruction to disregard cured any prejudicial effect.  Dinkins v. State,
894 S.W.2d 330, 357 (Tex. Crim. App. 1995).
Generally, an instruction to disregard cures the prejudicial effect except
where the comment or question Ais clearly calculated to inflame the
minds of the jury or so indelibly ingrained in their minds that it is not
susceptible to withdrawal or retraction by an instruction to disregard.@
Fuller, 1998 WL 548709 at *10; see also Dinkins, 894 S.W.2d at
357.  Here, the questions were not so
inflammatory as to render an instruction to disregard ineffective. Thus,
because any possible prejudice was cured by the instruction to disregard, we
need not address whether the State=s questions were improper commitment
questions. We overrule appellant=s fourth point of error.

Failure
to Conduct Voir Dire of State=s
Witness








In
his fifth point of error, appellant claims the court erred in denying defense
counsel=s
request to conduct a voir dire examination of the
Compaq investigator as an expert witness on the value of the processors.  The State examined James Hathaway, the
complainant on the indictment and Compaq=s representative, regarding the
value of the stolen property.  Appellant=s
trial counsel sought to conduct a voir dire
examination of Hathaway to establish his qualifications for determining the
fair market value of the processors.  The
trial court denied the voir dire request.  In reviewing a trial court=s
admission or exclusion of evidence we apply an abuse of discretion
standard.  Goff v.
State, 931 S.W.2d 537, 553 (Tex. Crim. App.
1996).

Fair
market value must be established if the testimony concerning value is given by
someone other than the owner.  Sullivan v. State, 701 S.W.2d 905, 908 (Tex. Crim. App. 1986). 
It has long been the rule in this State that the owner of property is
competent to testify as to the value of his own property.  Jones v. State, 814 S.W.2d 801, 803 (Tex. App.CHouston [14th Dist.] 1991, no pet).  When an owner testifies, the presumption is
that the owner is testifying to an estimation of the fair market value.  Id. 
Thus, the owner may testify as to the fair market value of the property
either in terms of purchase price or the cost to him of replacing the stolen
properly.  Id.  If appellant wishes to rebut the owner=s
opinion evidence, he must do so through the use of cross-examination and the
offer of controverting evidence as to the value of
the property.  Id.

Here,
James Hathaway was named as the complainant and owner in both of the
indictments.  As such, he need not be
taken on voir dire as an expert witness.  Appellant=s fifth point of error is overruled.

Improper Statement about Length of
Sentence

In
his sixth point of error, appellant contends the prosecutor improperly
testified to the jury about the length of sentence on a revocation of probation
during the guilt-innocence phase.  The
exchange went as follows:

Q.     Let=s talk about your probation.

A.     Yes, ma=am.

Q.     That is a felony
probation, correct?

A.     Yes, ma=am.

Q.     And you face two to ten years in prison,
correct?  If this crime
is true, your probation can be revoked and you can be sentenced to prison for
two to ten years?








A.     No, ma=am.

Q.     What do you thinkCyou=re
on ten years probation, if your probation is revoked, isn=t it true you can go to prison for up to ten years?

A.     No. I couldCI could do the rest of the time that I
haven=t done on
probation.

Q.     That
would be incorrect.  You could do up to
ten years in prisonC

The trial court sustained defense
counsel=s
objection to the comment about the length of the sentence.  The trial court then instructed the jury to
disregard the statement, overruling appellant=s motion for mistrial.  When the trial court gives a curative
instruction rather than granting a motion for mistrial, the question becomes
whether the trial court erred in denying the motion for mistrial.  Hyett v.
State, 58 S.W.3d 826, 832 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).  AOnly when it is apparent that an
objectionable event at trial is so emotionally inflammatory that curative
instructions are not likely to prevent the jury being unfairly prejudiced
against the defendant may a motion for mistrial be granted.@  Bauder v.
State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996)
(en banc); see also Ford v. State, 14 S.W.3d 382, 394 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  To the extent that the statement was
objectionable, we find the trial court=s instruction was sufficient to cure
any prejudice and the prosecutor=s comment did not rise to the level
necessary to warrant the granting of a mistrial.  

Appellant=s
sixth point of error is overruled.          

Improper Closing Argument: Shifting
Burden








In point of error seven, appellant
contends the prosecutor improperly attempted to shift the burden of proof from
the State by arguing to the jury that appellant could have presented
contradictory evidence.[1]  Proper jury argument includes four areas: (1)
summation of the evidence presented at trial, (2) reasonable deduction drawn
from that evidence, (3) answer to the opposing counsel=s
argument, or (4) a plea for law enforcement. 
McFarland v. State, 845 S.W.2d 824, 844 (Tex. Crim.
App. 1992) (en banc), cert. denied, 508 U.S. 963 (1993).  To constitute reversible error the argument
must be manifestly improper or inject new, harmful facts into the case.  Jackson v. State, 17
S.W.3d 664, 673 (Tex. Crim. App. 2000); Gaddis v.
State, 753 S.W.2d 396, 398 (Tex. Crim. App.
1988).

The Court of Criminal Appeals has
repeatedly held that the prosecutor may comment on the defendant=s
failure to produce witnesses and evidence so long as the remark does not fault
the defendant for exercising his right not to testify.  Jackson, 17 S.W.3d at 674; Patrick
v. State, 906 S.W.2d 481, 491 (Tex. Crim. App.
1995) (en banc), cert. denied, 517 U.S. 1106 (1996); Livingston v.
State, 739 S.W.2d 311, 338 (Tex. Crim. App.
1987), cert. denied, 487 U.S. 1210 (1988).  Here, reference to the defense=s
failure to produce contrary witnesses and phone records was not improper.  

Appellant=s
seventh point of error is overruled.

Having denied appellant=s
seven points of error, we affirm the trial court=s judgment.

 

 

/s/        Leslie Brock Yates

Justice

 

 

Judgment rendered and Memorandum Opinion filed September
11, 2003.

Panel consists of Justices Yates, Hudson, and Frost.

Do Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The statements
made during the State=s final argument were:

 

He had a reason to lie, and there is nothing to
substantiate what he=s saying.  Something to substantiate every one of these guards, their
identifications.  And he wants to
sit up and say it=s not me.  I don=t know any of these people.  I=m
a victim.  Out to get me.  Sir, the perfect world doesn=t
work that way.  If you thinkBif they had documents to show it wasn=t him making the phone calls, you would see them.  If they had documents to show someone else
during those times, you would see them.  

 

Following a sustained objection and
instruction to disregard, the prosecution made the following statement, Athe defense has the power to make people appear, to
subpoena records, just like the State.@  The trial court overruled appellant=s objection in this regard.