# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00306-CR

**Douglas Kelly Pye, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 05-547-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

Appellant Douglas Kelly Pye appeals his state jail felony conviction for forgery. *See* Tex. Penal Code Ann. § 22.21 (West Supp. 2008). The jury found appellant guilty and the trial court assessed punishment at one year's imprisonment.

## POINTS OF ERROR

Appellant advances five points of error, four of which allege the trial court erred in overruling his motion for new trial. First, appellant asserts the trial court erred in failing to grant a new trial on the basis of ineffective assistance of counsel because counsel did not "view" the presentence report forty-eight hours before the hearing concerning the presentence report. Alternatively, appellant claims counsel failed to object to the presentence report, failed to prepare appellant to respond in court to the presentence report, and interrupted appellant during his response at the hearing.

Second, appellant urges error in the overruling of the new trial motion because counsel was ineffective when he gave erroneous legal advice that appellant had a meritorious "defense" of a lack of intent to defraud or harm the complainant. It is claimed that this led appellant to make statements in the presentence interview and later in court that were characterized as a "minimization of guilt," resulting in the rejection of a plea bargain agreement.

Third, error is again urged in the overruling of the new trial motion because appellant was deprived of counsel at a critical stage of the proceedings resulting from the district attorney's disclosure to appellant's counsel of the disparaging remarks made about counsel by appellant in recorded jail telephone conversations.

Fourth, appellant argues that a new trial should have been granted because the trial court abused its discretion at the new trial hearing by admitting into evidence "eleventh hour" affidavits offered by the State on the last day before the motion for new trial was overruled by operation of law.

Fifth and last, appellant contends that the trial court erred in failing to follow a plea bargain agreement for deferred adjudication because (1) appellant did not minimize his guilt in the presentence report, or (2) the trial court had accepted the guilt plea and plea bargain agreement prior to requesting a presentence report. We will affirm the judgment of conviction.

## FACTUAL BACKGROUND

Appellant does not challenge the legal or factual sufficiency of the evidence to sustain the conviction. A recitation of the facts and the procedure utilized will place the points of error in proper perspective. In January 2005, appellant Pye and Dustin Almazan were both employees at

the Mac Haik Ford automobile dealership in Georgetown. Appellant had assisted Almazan, his "cousin-in-law," in obtaining employment there about a year earlier. Sometime in January 2005, Almazan's employment was terminated, apparently for failing to meet his sales quota. The Haik dealership "cut" Almazan's termination check in the amount of $59.80 and placed the check in a drawer in the "sales tower" of the dealership for Almazan. The record reflects that appellant obtained the Almazan check, forged Almazan's name, and cashed the check at a food mart. This was done without the knowledge, consent, or permission of Almazan. When Almazan inquired about the check, the dealership learned that the check had been cashed. Another check was issued to Almazan by the dealership, and the agency's bank took the loss after Almazan filed a forgery affidavit. When Almazan was at the Georgetown police station, he received a telephone call from appellant. Almazan returned the call on a police telephone and the conversation was recorded. In the conversation, appellant admitted to having cashed the check without permission by signing Almazan's name.

John Tirella, inventory manager of the Haik dealership, investigated the missing check. Tirella talked to appellant, who, in an admission against interest, stated to Tirella that he (appellant) had taken the check and cashed it. Detective Ronald Price testified as to the filing of charges against appellant on February 16, 2005, and the recorded telephone conversation between Almazan and appellant.

Throughout the record, there was testimony about a "spin" check issued by the Ford Motor Company to a salesman who had sold a certain type of vehicle as an additional commission. The "spin" checks in these cases were always issued only in the name of the first salesman on

3

the list because the federal income tax form 1099 was sent to that individual. If two or more salesmen were involved in a sale, they could agree how to split the "spin" check made out to the first name on the list. If a dispute arose, the Haik dealership encouraged a settlement but did not enforce agreements. It appears that in January 2005, Almazan received an $82.50 "spin" check for the sale of a Lincoln Navigator. Defense exhibit No. 2, a Haik dealership document, was introduced at trial. It reflected that the salesmen listed on the sale of the Lincoln Navigator were "Almazan, Dustin" and "Pye, Douglas," in that order.

John Tirella testified that when he questioned appellant about the matter, appellant simply stated that he had made "a mistake and messed up." Appellant made no claim to Tirella that Almazan intended to share the "spin" check of $82.50 with him (appellant). Tirella further testified that he did not know of any agreement between Almazan and appellant about the sale of the Lincoln automobile.

Dustin Almazan testified that he repeatedly called the Haik dealership about his termination check of $59.80 and was finally told that it had been cashed. Almazan filed a forgery affidavit and went to the Georgetown police department. In two or three earlier telephone conversations with appellant, no mention was made to Almazan that appellant had any knowledge of the cashed check. According to Almazan, it was not until the telephone conversation recorded by the police that he learned appellant had taken the check and cashed it.

Almazan revealed that appellant came to the site of Almazan's new job in Temple and put $60.00 in cash on the desk. Almazan refused to accept the money. Almazan placed the money in a desk drawer and left that employment two days later. As far as he knew, the money was

4

still in the drawer. Almazan testified that appellant was trying to get him to drop the case. Almazan related that he had earlier received the "spin" check for the sale of a Lincoln automobile, which was issued solely to him, although appellant was also listed as a salesman on the dealership records. He admitted having an ongoing dispute with appellant about sharing the "spin" check, but had finally decided not to share. He had not shared any other "spin" checks that he had received.

Appellant did not testify at the guilt/innocence stage of the trial before the jury, but did testify at the penalty stage of the trial before the trial court.

## PROCEDURAL BACKGROUND

On May 31, 2005, appellant was indicted on two counts of forgery. On February 6, 2006, appellant, represented by retained counsel, waived trial by jury and entered a plea of guilty before the trial court to the first count of the indictment charging a state jail felony. The State offered a "one day only" plea bargain offer, to which appellant and his counsel agreed. The plea bargain agreement called for a punishment of four years of deferred adjudication supervision (probation), a $2,500 fine, and thirty days in jail with jail credit for time in confinement. Appellant was duly admonished of the consequences of his guilty plea and the trial court was made aware of the plea bargain. Appellant made a judicial confession after which the trial court examined appellant as to the plea bargain. The record then reflects:

The Court:     Mr. Pye. I accept your plea. I find the evidence substantiates your guilt, but I do not find you guilty at this time.

5

The cause was recessed to await the preparation of the presentence report and to then determine whether the plea bargain agreement was to be accepted.

The case was recalled on March 23, 2006. In a somewhat informal manner, the trial court established appellant's identity and what had earlier transpired in the case; then, skipping over appellant's prior criminal record, the trial court directed questions personally to appellant raising an issue as to whether appellant was denying his guilt. Appellant acknowledged the truth of the statements in the presentence report that he had a "stupid, crazy idea" to cash the check so it could be easily divided, with the intent to give Almazan an opportunity to pay appellant the forty dollars owed him from the sharing of the "spin" check. Appellant agreed that he had also told the probation interviewer that he had no intent to defraud or harm anyone. Appellant's counsel tried to modify appellant's statements and his admission that he was only guilty of a part of the allegations in the indictment. The prosecutor then raised questions about proceeding with the plea bargain. The trial court rejected the plea agreement of deferred adjudication and ordered the case set for a jury trial. There were no objections to the trial court's actions.

The jury trial on appellant's plea of not guilty commenced on May 1, 2006, this time on the second count of the indictment. The first count was waived and abandoned by the State. After the jury found appellant guilty, the trial court conducted a penalty hearing. Appellant testified that he was disappointed in the jury's verdict, but his intent was to give Almazan the opportunity to repay him the money owed. He explained that he did not intend to keep the money if there was a dispute. He agreed that his testimony was the same as revealed to the probation officer for

6

the purposes of the PSI. The trial court cited appellant's testimony regarding "thinking errors" in assessing a one year state jail felony punishment instead of probation. Sentence was imposed on May 2, 2006.

## MOTION FOR NEW TRIAL

In points of error one and two, appellant urges that the trial court erred in overruling the motion for new trial, which included separate claims of ineffective assistance of counsel. The claims are related to counsel's conduct prior to the jury trial which resulted in appellant's conviction and in which appellant was represented by same counsel (Robert Phillips) or counsel of the same law firm (Mark Brunner). We shall begin with the law applicable to the hearing on the motion for new trial and the claims for the ineffective assistance of counsel.

## STANDARD OF REVIEW

An appellate court reviews a trial court's denial of a motion for new trial under an abuse of discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). At a hearing on a motion for new trial, the trial court is the trier of fact and the sole judge of the credibility of the witnesses. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); *Woodall v. State*, 77 S.W.3d 388, 393 (Tex. App.—Fort Worth 2002, pet. ref'd); *George v. State*, 20 S.W.3d 130, 135 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Its findings should not be disturbed unless an abuse of discretion has been demonstrated. *Tollett v. State*, 799 S.W.2d 256, 259 (Tex. Crim. App.

1990).  We view the evidence in the light most favorable to the trial court's ruling on the new trial motion and presume that all reasonable factual findings that could have been made against the losing party were made against the losing party.  *Charles*, 146 S.W.3d at 208.  We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable.  *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).  The trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record would support the trial court's ruling.  *Webb v. State*, 232 S.W.3d 109, 113 (Tex. Crim. App. 2007); *Holden*, 201 S.W.3d at 763.

## A REVIEW OF THE LAW—COUNSEL'S INEFFECTIVE ASSISTANCE

Appellant contends that the trial court erred in overruling the motion for new trial by rejecting his allegations as to the ineffective assistance of trial counsel.  We first examine the applicable law by quoting from *Lopez v. State*, 96 S.W.3d 406 (Tex. App.—Austin 2002, pet. ref'd):

> A defendant in a criminal case has a constitutional right to the reasonably effective assistance of counsel.  *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991).  However, a defendant is not entitled to errorless counsel or counsel whose competency is judged by hindsight.  *Id*.  In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court promulgated a two-pronged test to determine whether representation was so inadequate that it violated a defendant's Sixth Amendment right to counsel.  The *Strickland* analysis has been adopted in Texas and applies to claims arising under article one, section ten of the Texas Constitution.  *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).  Under the two-pronged test, a convicted defendant must first show that his counsel's performance was deficient, and second, show that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  The defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance

of the evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). If the defendant fails to make the required showing of both deficient performance and prejudice, his claim must fall. *Id*.

The review of a claim of ineffective assistance of counsel is highly deferential. *Strickland*, 466 U.S. at 689. A reviewing court must indulge a strong presumption that trial counsel's conduct falls within a wide range of reasonable representation. *McFarland*, 928 S.W.2d at 500. The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. We assess the totality of counsel's representation rather than his or her isolated acts or omissions. *Strickland*, 466 U.S. at 689. *Oestrick v. State*, 939 S.W.2d 232, 239 (Tex. App.—Austin 1997, pet. ref'd). While a single egregious error of commission or omission may be sufficient, reviewing courts generally are hesitant to declare counsel ineffective based on a single alleged miscalculation. *Thompson v State*, 9 S.W.3d 808, 813, 814 (Tex. Crim. App. 1999).

*Id*. at 416-17.

## POINT OF ERROR TWO

We turn first to point of error two which states:

A new trial should have been granted because Mr. Pye was denied effective assistance of counsel when he was given erroneous legal advice by his trial attorneys that he had a meritorious defense of lack of intent to harm or defraud the complainant, which resulted in the statements made in the PSI which were erroneously characterized as a minimization of guilt, as well as a much stiffer sentence than that contemplated by the plea agreement.

Both counts of the indictment were drafted under the provisions of section 32.21. Tex. Penal Code Ann. § 32.21 (West Supp. 2008). Subsection (b) of section 32.21 provides: "a person commits an offense if he forges a writing with intent to defraud or harm another." "Another" is defined as "a person other than the actor." *Id.* § 1.07(a)(5) (West Supp. 2008). In both counts

9

of the indictment, the name of the complainant, Dustin Almazan, was alleged as the person appellant had the intent to defraud or harm.[1] The State chose to specifically allege the name of the complainant rather than "another."

Appellant's affidavit, admitted at the hearing on the motion for new trial, reflects that after discussing an "open plea" of guilty strategy, he and attorney Phillips turned to discussing a contested jury trial. Phillips then told appellant that appellant "could win the case" with an emphasis on "could" if the State failed to prove appellant had an intent to defraud or harm his "cousin-in-law" Almazan. Phillips felt that while much of the evidence was damaging, appellant had a "defense"[2]

---

[1] The pertinent parts of the counts of the indictment allege that on or about January 31, 2005, appellant:

Paragraph One

altered, made, completed, executed, or authenticated a writing, namely check **020903** from the account of **Mac Haik Ford** at **Bank One**, so that it purported to be the act of **Dustin Almazan**, who did not authorize that act, with intent to defraud or harm **Dustin Almazan**,

Paragraph Two

issued, transferred, registered the transfer of, passed, published, or uttered a writing, namely, check **020903** from the account of **Mac Haik Ford** at **Bank One**, knowing such writing had been altered, made, completed, executed, or authenticated so that it purported to be the act of **Dustin Almazan**, who did not authorize that act, with intent to defraud or harm **Dustin Almazan**,

[2] The term "defense" is often loosely used in both civil and criminal law practice. In fact, a "defense" is a defendant's "stated reason why the plaintiff or prosecutor has no valid case." *See Black's Law Dictionary* 343 (7th ed. 1999). There are many types of defenses including capacity, collateral, dilatory, frivolous legal, meritorious and sham. *Id*. In legal circles, the word "defense" may be commonly used to refer to the State's inability to prove each element of an offense beyond a reasonable doubt in a criminal prosecution.

on the "intent" issue. Subsequently, the record shows that appellant accepted a plea bargain and entered a guilty plea to the first count of the indictment. During the proceedings, upon interrogation by attorney Phillips, appellant testified that he was pleading guilty of his own free will; that he was knowingly foregoing any potential "defense" on the intent issue; and that he had willingly accepted the plea bargain agreement.[3]

---

Technically, a "defense" or an "affirmative defense" are only those so labeled in the penal code. Tex. Penal Code Ann. §§ 2.03, 2.04 (West 2003).

[3] The record at the guilty plea proceedings reflects, in part:

> Q. Now, we've talked about your defenses in the case if we went to trial; notably, the fact that they would have to show that you had a certain intent to defraud the complaining witness in the case who is your cousin. I've gone over that with you, haven't I?
>
> A. Right.
>
> Q. And you understand that if a jury had a reasonable doubt about that, they would have to find you not guilty. I've explained that to you.
>
> A. That's correct.
>
> Q. All right. Knowing all these things, knowing what the risk and advantages are of going to trial, it's been your decision to accept this plea agreement today. Is that correct?
>
> A. Yes.
>
> Q. Have you been satisfied with my representation in this case?
>
> A. Yes.

It appears that appellant is contending that his trial counsel's advice about a "defense" led him to make statements about his lack of intent to the probation officer and to the trial court, which were later characterized as a "minimization of guilt" statements, resulting in the rejection of the plea bargain and a "stiffer" sentence following the subsequent jury trial.

The State has the burden to prove each element of the offense beyond a reasonable doubt. *Vantil v. State*, 884 S.W.2d 212, 214 (Tex. App.—Fort Worth 1994, no pet.). The State, being bound by its allegations in the indictment, must prove them beyond a reasonable doubt. *Butler v. State*, 429 S.W.2d 497, 502 (Tex. Crim. App. 1968). Trial counsel's evaluation of appellant's case that appellant had a potential "defense" if the State failed to prove beyond a reasonable doubt the essential element of "intent" appears to be correct, not erroneous as claimed by appellant.

Appellant, however, takes a different tact and relies upon *Pierce v. State*, 113 S.W.3d 431 (Tex. App.—Texarkana 2003, pet. ref'd), which was extant at the time of his proceedings and of which he claims his counsel was unaware. Appellant asserts that *Pierce* holds that if the State fails to prove in a forgery case an intent to defraud or harm a particular person, the evidence is still sufficient if it simply shows an intent to defraud or harm "another." Therefore, appellant urges that his trial counsel's advice about a "defense" was erroneous in this case.

The defendant Pierce was on probation after being convicted of "theft by worthless check." The State sought to revoke probation based on a violation of a probationary condition not to commit an offense against the law. The revocation motion alleged, in pertinent part, that Pierce "did then and there with the intent to defraud or harm another, make a writing that purported to be the act of A. K. Bobbitt, who did not authorize the act."

12

The facts were not set out in any great detail in the *Pierce* opinion. It appears that Bobbitt gave a $160 check to the defendant's employer for services rendered. The payee line on the check was left blank. Pierce entered her name as payee, endorsed the check, and cashed it at a local convenience store. *Pierce*, 113 S.W.3d at 435. At the revocation hearing, Pierce claimed her employer had instructed her to make the check payable to herself and use the money to buy office supplies. In disposing of the sufficiency of evidence question, the Texarkana Court noted:

> For the sake of completeness, we also note Pierce's contention, embedded within this point of error, that the evidence failed to show she acted with the intent to defraud Mr. and Mrs. Bobbitt. Such a showing was not necessary. The requisite intent to defraud is directed at "another." Tex. Code Crim. Proc. Ann. art. 38.19 (Vernon 1979). The Texas Penal Code defines "another" as "a person other than the actor." Tex. Penal Code Ann. § 1.07(a)(5) (Vernon 2003). Here, Mrs. Bobbitt testified the check was given as payment for services by Pierce's employer, and the employer testified to the same. Having rendered services and not having received payment for those services, the employee suffered harm sufficient to satisfy the forgery statute.

*Id.* at 436 n.2.

*Pierce* is distinguishable from the instant case both on the facts and the law. In *Pierce*, the allegation in the revocation motion was "an intent to defraud or harm another," not a particular person as in the instant indictment. A motion to revoke probation need not meet the specificity requirement of an indictment or information. *Charcon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977); *Tamez v. State*, 534 S.W.2d 686, 689 (Tex. Crim. App. 1976). The State need not, in a motion to revoke probation, use the same precise terms as necessary in an indictment allegation. *Bradley v. State*, 608 S.W.2d 652, 655 (Tex. Crim. App. 1980). Moreover, the burden of proof in a revocation of probation proceeding is by a preponderance of evidence. *Scamardo*

13

*v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). In a criminal trial, no person may be convicted of an offense unless each element of the offense as alleged is proved beyond a reasonable doubt. *See* Tex. Penal Code Ann. § 2.01 (West 2003). The instant indictment alleged "Dustin Almazan" as the person appellant had the intent to defraud or harm, while the revocation motion in *Pierce* simply alleged the statutory "another."

Other than holding the evidence was sufficient to revoke probation, the real meaning of the *Pierce* court in its footnote is not altogether clear. The court noted that it was the defendant's contention that the evidence was insufficient to show her intent to defraud or harm the Bobbitts. Rather than discuss that contention, the court, in effect, observed that "another" had been alleged in the revocation motion, and that the defendant's employer had been shown to be harmed. We will not pause to examine all potential meanings or possible options under the *Pierce* footnote. We do not ascribe, however, to the meaning of *Pierce* as urged by appellant. Here, a specific person was named in the indictment as the complainant. Furthermore, *Pierce* is not binding on this Court. *See Delamora v. State*, 128 S.W.3d 344, 359 (Tex. App.—Austin 2004, pet. ref'd) (court of appeals is not bound by decision of another court of appeals).

At the guilty plea proceedings, appellant acknowledged under oath that he was pleading guilty freely and voluntarily and that he was foregoing any potential defenses. Appellant is in no position to fault his counsel's earlier advice for his own bungled statements in the presentence interview and to the trial court.

A defendant is not entitled to errorless counsel or counsel whose competency is judged by hindsight. *Stafford*, 813 S.W.2d at 506. We assay the totality of counsel's representation

14

rather than isolated acts or omissions.  *Strickland*, 466 U.S. at 689.  Here, appellant has failed to establish either prong of the *Strickland* standard.  *McFarland*, 928 S.W.2d at 500.  The trial court did not abuse its discretion in overruling the motion for new trial on the basis of ineffective assistance of counsel as advanced in the second point of error.

## POINT OF ERROR ONE

As with the second point of error, appellant complains that the trial court erred in overruling the motion for new trial based on the claim of ineffective assistance of counsel.  The first point, in a multifarious vein, states:

> A new trial should have been granted because appellant's trial counsel failed to ask to view the PSI at least 48 hours before the March 2006 sentencing hearing pursuant to statute, and appellant did not affirmatively waive this requirement.  Alternatively, trial counsel was ineffective, with the resulting harm being that objections were not made to portions of the PSI, appellant was inadequately prepared to respond to portions of the PSI, and appellant was interrupted by his trial counsel when responding, all of which led to the case not being resolved at the plea hearing, with the result being a one year state jail sentence, instead of the plea recommendation of four years deferred adjudication probation.

Appellant relies in his brief upon article 42.12, section 9(d) of the code of criminal procedure, which provides:  "Unless waived by the defendant at least 48 hours *before sentencing* a defendant, the judge shall permit the defendant or his counsel to read the presentence report." Tex. Code Crim. Proc. Ann. art. 42.12, § 9(d) (West Supp. 2008) (emphasis added).

Appellant's contention of a lack of statutory compliance was not raised at trial, in the motion for new trial, or at the hearing on said motion.  A complaint on appeal must comport

with the trial objection. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). A trial court can hardly be faulted for not ruling on a matter raised for the first time on appeal.

In his motion for new trial, appellant did advance a related contention. He urged that his trial counsel failed to permit him to read the presentence report or advise him of the contents "prior to the day of sentencing." All of this was rebutted by appellant's own affidavit that he had read the report in court prior to the hearing on March 23, 2006, and had then conversed with his attorney about the report. It is further contradicted by the record reflecting his remarks to the trial court that his statements in the presentence report were accurate. More importantly, there was no sentencing on March 23, 2006.[4] Sentence was pronounced on May 2, 2006, after a jury trial.

---

[4] The use of the term "sentencing hearing" in reference to the March 23, 2006 proceeding is not correct. This was not a bifurcated proceeding. Prior to the 1965 Code of Criminal Procedure, all criminal trials were unitary. *Duhart v. State*, 668 S.W.2d 384, 386 n.3 (Tex. Crim. App. 1984). After the effective date of the code (January 1, 1966) all trials remained unitary except those expressly authorized to be bifurcated—pleas of not guilty before a jury. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 2(a) (West Supp. 2008). The bifurcation authorized by statute does not apply to misdemeanor cases within the jurisdiction of the justice and municipal courts. *Id.*

Bifurcation does not occur where a defendant waives trial by jury and enters a plea of guilty or nolo contendere before the trial court to the indictment or other pleading. *Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001); *Saldana v. State*, 150 S.W.3d 486, 489 (Tex. App.—Austin 2004, no pet.); *Lopez v. State*, 96 S.W.3d 406, 412 (Tex. App.—Austin 2002, pet. ref'd); *State v. Kersh*, 2 S.W.3d 636, 638 (Tex. App.—Houston [14th Dist.] 1999), *aff'd*, 127 S.W.3d 775 (Tex. Crim. App. 2004).

A common practice that has developed is best explained by Professors Dix and Dawson:

While it is common for a judge to bifurcate a bench trial into guilt/innocence and penalty phases, that is neither required nor authorized by Article 37.07. By its own terms, bifurcation is to occur in cases "which are tried before a jury on a plea of not guilty." The Court of Criminal Appeals recognized in *Barfield v. State* that bifurcation does not occur in jury-waived trials even when the judge employs procedures characteristic of bifurcation. Writing for the majority, Judge Womack

16

Continuing to argue his first point of error, appellant claims his counsel was ineffective because counsel did not object to portions of the presentence report. Appellant does not tell us what portions of the report that he has in mind or the basis of any proper objection that could have been made. The mere assertion of error and the failure to brief the question presents nothing for review. The same is true of appellant's simple assertion that he was not adequately prepared by counsel to respond to undesignated portions of the report.

Appellant further complains that counsel interrupted his response to the presentence report before the trial court. Appellant does not direct our attention to the record indicating where and how counsel interrupted him. Our examination reveals no interruption. Counsel did hand a copy of the indictment to the trial court and tried to clarify appellant's remarks while acting on appellant's behalf. The record does not support appellant's contention.

---

noted that the practice of unauthorized bifurcation is common in cases in which the defendant is convicted (often on a plea of guilty or nolo contendere) and the judge recesses the proceedings to enable a community supervision officer to conduct a presentence investigation. The parties later assemble for the sentencing hearing to consider the presentence report and determine sentence. While that procedure may be thought of by the participants as a bifurcated trial, it is not, but is rather an extended unitary trial punctuated by a recess in its middle.

43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 38.14 (2d ed. Supp. 2008-09) (footnotes omitted).

Here, there was a unitary trial recessed for preparation of a presentence report. If the trial court had approved the deferred adjudication plea bargain, there would have been no adjudication of guilty and no judgment and sentence as such. If the trial court rejected the plea bargain, as it did, appellant had the right to withdraw his guilty plea and move to a jury trial on a plea of not guilty, as appellant did. Only if appellant had persisted in pleading guilty on an "open plea" would sentence have been considered.

Appellant did not sustain his burden of proof to meet the two-pronged test of *Strickland*. Thus, the trial court did not abuse its discretion in overruling the motion for new trial as claimed in the first point of error, which is overruled.

## A CRITICAL STAGE WITHOUT COUNSEL?

In point of error three, appellant asserts that a "new trial should have been granted because appellant's right to the effective assistance of counsel in preparing a motion for new trial was interfered with by the District Attorney's office's disclosure to trial counsel of allegedly disparaging phone calls which caused counsel to abandon appellant during the bulk of this critical period."

The thrust of appellant's argument is that he was denied counsel for twenty-one of the thirty days permitted by law in which to file a motion for new trial after the imposition of the sentence in open court. *See* Tex. R. App. P. 21.4(a). Appellant seeks an entirely new trial for a post-trial occurrence. He recognizes that his trial counsel formally withdrew and substitute counsel entered the case before the expiration of the thirty-day period.

Appellant was sentenced on May 2, 2006, with his retained trial counsel present.[5]  On May 17, 2006, appellant's retained trial attorney sent appellant a letter terminating his representation of appellant, not on the basis of any contract term, but because of information Phillips had "learned from the District Attorney's office."  Phillips informed appellant that recorded jail telephone conversations reflected that appellant had stated, in telephone conversations with his family, that the Phillips law firm "took a dive" and purposely lost appellant's case.  Phillips also informed appellant that Phillips had learned that appellant's mother was tape-recording telephone calls with his law firm.  A copy of Phillips's motion to withdraw as counsel was enclosed.  Appellant was advised to retain other counsel and informed that June 1, 2006, was the last day to give notice of appeal.

The motion to withdraw as counsel was filed on May 18, 2006.  On May 23, 2006, at a hearing in open court, the Phillips law firm was permitted by the trial court to withdraw as

---

[5]  Under the terms of the contract by which appellant retained Robert Phillips and his law firm, the representation was to terminate on the date of the sentence.  This is immaterial here because of the law and the circumstances that unfolded.

Trial counsel's legal responsibilities do not automatically terminate at the conclusion of the trial.  *Ward v. State*, 740 S.W.2d 794, 796 (Tex. Crim. App. 1987).  Trial counsel remains the defendant's counsel until expressly permitted to withdraw.  *Id*. at 797.

> Trial counsel, whether retained or appointed, has the duty to consult with and fully advise his client concerning the meaning and effect of the trial court's judgment, the right to appeal from that judgment, and the necessity of giving notice of appeal and taking other steps to pursue an appeal, as well as the duty to express his professional judgment as to possible grounds for appeal and their merit, and delineate the advantages and disadvantages of appeal.

*McBride v. State*, 249 S.W.3d 673, 674 (Tex. App.—Fort Worth 2008, no pet.) (citing *Oldham v. State*, 977 S.W.2d 354, 360-61 (Tex. Crim. App. 1998) (op on reh'g); *Funk v. State*, 188 S.W.3d 229, 231 (Tex. App.—Fort Worth 2006, no pet.)).

19

counsel with the express approval of appellant. Newly retained counsel, Gregory Sherwood, was substituted as appellant's new appellate counsel. On that date, appellant, represented by Sherwood, gave notice of appeal. The trial court set a $25,000 appeal bond for appellant, which was executed the next day. On May 31, 2006, a timely motion for new trial was filed by Sherwood, attaching affidavits and Phillips's letter.

We turn now to whether the period of time in which to file a motion for new trial is a critical stage of the proceedings requiring the assistance of counsel.

An accused is entitled to the assistance of counsel under the Sixth Amendment of the United States Constitution at "every critical stage of the proceedings" where the adversial proceedings have begun, absent a valid waiver of the right to counsel. *See Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993); *Garcia v. State*, 97 S.W.3d 343, 347 (Tex. App.—Austin 2003, no pet.). Whether a particular stage is critical turns on the assessment of the usefulness of counsel to the accused at the time. *Upton*, 853 S.W.2d at 553 (citing *Patterson v. Illinois*, 487 U.S. 285, 290-91 (1998)).

Without question, the hearing itself on the motion for new trial is a critical stage of the proceedings. *Connor v. State*, 877 S.W.2d 325, 326 (Tex. Crim. App. 1994); *Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim. App. 1978). *Trevino* makes clear that a criminal prosecution within the meaning of the Sixth Amendment and article I, section 10 of the Texas Constitution, does not end with the defendant's conviction. *Massingill v. State*, 8 S.W.3d 733, 736 (Tex. App.—Austin 1999, no pet.).

Does the thirty-day period after sentence in which to file a motion for new trial constitute a critical stage of the criminal proceedings? *See* Tex. R. App. P. 21.4(a). For some time, the Texas Court of Criminal Appeals did not address the issue,[6] while most courts of appeal concluded that it was a critical stage.[7] In *Cooks v. State*, 240 S.W.3d 906 (Tex. Crim. App. 2007), the Texas Court of Criminal Appeals decided, as a matter of federal constitutional law, that the thirty-day period in which to file a motion for new trial is a critical stage of the proceeding and a defendant has the right to counsel during that period. *Id*. at 911-12. *Cooks* held that while the defendant there was deprived of counsel during a critical stage, the deprivation was subject to a harmless error analysis and was harmless in that case. *Id.*

In resolving cases like this one, we find we must consider rebuttable presumptions. There exists a rebuttable presumption that trial counsel continued to effectively represent a defendant during the time for filing a motion for new trial. *McBride v. State*, 249 S.W.3d 673, 674 (Tex. App.—Fort Worth 2008, no pet.) (citing *Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998) (op on reh'g)); *Funk v. State*, 188 S.W.3d 229, 231-32 (Tex. App.—Fort Worth 2006, no pet.). This presumption arises, in part, because counsel remains as defense counsel for all purposes until expressly permitted to withdraw. *See Ward v. State*, 740 S.W.2d 794, 796 (Tex. Crim.

---

[6] *See Smith v. State*, 17 S.W.3d 660, 663 n.3 (Tex. Crim. App. 2000); *Oldham*, 977 S.W.2d at 360; *Connor v. State*, 877 S.W.2d 325, 326-27 (Tex. Crim. App. 1994); *Garcia v. State*, 97 S.W.3d 343, 347 (Tex. App.—Austin 2003, no pet.).

[7] As a matter of federal constitution law, most courts of appeals have concluded the time period in which to file a motion for new trial is a critical stage of the proceedings. *See, e.g.*, *Funk*, 188 S.W.3d at 231; *Garcia*, 97 S.W.3d at 348; *Champion v. State*, 82 S.W.3d 79, 83 (Tex. App.—Amarillo 2002, pet. ref'd); *Prudhomme v. State*, 28 S.W.3d 114, 119 (Tex. App.—Texarkana 2000, pet. ref'd); *Hanson v. State*, 11 S.W.3d 285, 288 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

App. 1987). And this presumption is not rebutted when there is nothing in the record to suggest otherwise. *Smith v. State*, 17 S.W.3d 660, 662-63 (Tex. Crim. App. 2000). When no motion for new trial is filed in a case, the rebuttable presumption is that it (the motion) was considered and rejected by a defendant and his counsel. *Id.*

This general presumption does not apply where counsel has been permitted to withdraw or when counsel is replaced by substitute counsel during the time in which to file a motion for new trial. *Garcia*, 97 S.W.3d at 348; *Massingill*, 8 S.W.3d at 735. In urging that he has rebutted the general presumption here, appellant points to his trial counsel's withdrawal and the substitution of other retained counsel.

We agree that the general presumption has been rebutted. Appellant, under the circumstances, still must confront another presumption not established by the time his brief was filed. *In Cooks*, the Texas Court of Criminal Appeals recognized a rebuttable presumption that an appellant is adequately represented by substitute appellate counsel during the time remaining to file a motion for new trial after the substitution and the withdrawal of earlier counsel.[8] 240 S.W.2d at 911. Here, there were nine days remaining after May 23, 2006, when the substitution occurred in open court. Appellant's retained substitute counsel filed a motion for new trial, gave timely notice of appeal, and secured appellant's release on bond. There is no complaint that substitute counsel did not have sufficient time to advise appellant, to prepare and file the necessary documents, or to

---

[8] In this case, we are dealing with retained counsel before and after the substitution. Where an indigent defendant is involved, the appointment of new counsel is the substitution of counsel.

22

adequately represent appellant in the time remaining. Nothing in substitute counsel's representation rebuts the newly established presumption in *Cooks*, 240 S.W.3d at 911.

Nevertheless, appellant relies upon his claim that he was deprived of counsel for twenty-one days during the thirty-day period in which to file a motion for new trial. Appellant urges the deprivation of counsel for twenty-one days resulted from interference with the attorney-client relationship by the district attorney's office, who revealed to counsel recorded jail telephone conversations. The record is not well developed in this regard. When was the revelation of the telephone calls made? Who in the district attorney's office revealed this information to appellant's trial counsel? Appellant does not deny the telephone conversations or their nature, which indicate that the statements were made after the jury trial. Further, appellant has not disputed the fact that his mother was allegedly tape-recording her telephone calls to trial counsel's law office. From the affidavits introduced at the hearing on the new trial motion, we glean that appellant's relationship with his trial counsel was not altogether compatible from the beginning. Appellant would have this Court take the State roundly to task for disclosing the telephone conversations. He insists that some form of punishment for the State is in order. Appellant recognizes that where a defendant has been deprived of counsel during the time in which to file a motion for new trial, the normal procedure is to abate the appeal and remand the case to the trial court for a new period in which counsel may file a motion for new trial. *See Garcia*, 97 S.W.3d at 349; *Prudhomme v. State*, 28 S.W.3d 114, 121 (Tex. App.—Texarkana 2000, no pet.); *Massingill*, 8 S.W.3d at 738. Appellant argues that as a result of the district attorney's behavior, a different remedy should be imposed. He urges that an entirely new trial should be granted, or better still, that the prosecution should be dismissed. Either

23

action, appellant claims, would discourage all prosecutors from engaging in conduct such as the district attorney's conduct here. We reject appellant's suggestions.

The question is not who caused appellant's trial counsel to withdraw. There is enough blame to spread around. The issue is whether, given all the circumstances, including the withdrawal after twenty-one days and the substitution of retained counsel, appellant was deprived of counsel during the critical stage involved. We conclude that appellant was not deprived of counsel during the period in which to file a motion for new trial. Appellant lost twenty-one days of the thirty-day period, but lost nothing but time. After his substitution, newly retained counsel within nine days took all the action necessary to effectively represent appellant.[9] There are no claims that substitute counsel was hampered by time restraints or was ineffective, or that appellant was prejudiced by an action not taken within the twenty-one days before trial counsel's withdrawal. It being appellant's burden, he has not rebutted the newly established presumption regarding substitute counsel set forth in *Cooks*. *See* 240 S.W.3d at 911. The trial court did not abuse its discretion on this basis. The third point of error is overruled.

## CONSIDERATION OF AFFIDAVITS

In his fourth point of error, appellant claims that the trial court abused its discretion by admitting into evidence and considering the affidavits of his two trial attorneys at the hearing on the motion for new trial.

---

[9] It is noted that article 40.05 of the 1965 Texas Code of Criminal Procedure (now repealed) provided for only ten days after conviction to file a motion for new trial. Act of May 27, 1965, 59th Leg., R.S., ch. 722 (art. 40.05), 1965 Tex. Gen. Laws 317, 477.

An abuse of discretion is the standard of review when an appellate court reviews a trial court's ruling on the admission of evidence even in a hearing on a motion for new trial. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion only when the decision lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996).

With regard to the types of evidence allowed at a hearing on a motion for new trial, Rule 21.7 provides: "The court may receive evidence by affidavit or otherwise." Tex. R. App. P. 21.7; *see also Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). On May 31, 2006, appellant filed a motion for new trial. Attached thereto were three affidavits from appellant, his mother, Elisha Monty, and a co-worker, Duane Harris. The State filed a response on July 5, 2006, requesting that the hearing be held on the basis of affidavits from the witnesses. No affidavits were attached to this response.

Appellant, in his motion, requested that the hearing be held prior to July 16, 2006, the seventy-fifth day after the imposition of sentence on May 2, 2006, to prevent an overruling of the motion by operation of law. *See* Tex. R. App. P. 21.8 (a). In its response, the State requested that the hearing be held no later than July 17, 2006. This request was obviously influenced by the fact that July 16, 2006, the last day to conduct a hearing on the motion for new trial, fell on a Sunday. Therefore, it was permissible to hold the hearing on Monday, July 17, 2006, the seventy-sixth day after sentence. *See* Tex. R. App. P. 4.1(a).[10]

---

[10] Tex. R. App. P. 4.1(a) provides:

At the hearing on July 17, counsel acknowledged that he understood the hearing was to be conducted on affidavits, but objected to the State's two affidavits being introduced into evidence as being untimely. He objected to the "eleventh hour" disclosure of a twenty-three-page affidavit and a nine-page affidavit from Mark Brunner and Robert Phillips, respectively. Both had served as appellant's trial counsel, and most of appellant's grounds for new trial dealt with claims of ineffective assistance of counsel. Appellant's counsel had copies of these affidavits an hour or so before they were offered by the State. Counsel urged that he had not had sufficient time to study the affidavits. The trial court overruled the objection, noting that it would lose jurisdiction at the end of the day. Appellant then introduced his affidavits. Later during the hearing, the trial court sustained appellant's objections to specific parts of the State's affidavits. After the hearing, the trial court entered a written order denying the motion for new trial before the end of the day and the loss of jurisdiction.

Appellant now acknowledges that Rule 21.5 of the Texas Rules of Appellate Procedure does not place any time limitation on the State to file controverting affidavits to a new trial motion. He contends that it is unreasonable for a trial court to permit the introduction into evidence of previously undisclosed affidavits at a hearing on the last day before the motion is overruled by operation of law. *See* Tex. R. App. P. 21.8 (c). Appellant urges that the "motion for new trial rule" should be interpreted to require the State to file its affidavits within a reasonable time

---

(a) *In General*. The day of an act, event, or default after which a designated period begins to run is not included when computing a period prescribed or allowed by these rules, by court order, or by statute. The last day of the period is included, but if that day is a Saturday, Sunday, or legal holiday, the period extends to the end of the next day that is not a Saturday, Sunday, or legal holiday.

26

prior to the trial court's loss of jurisdiction. Appellant's concerns are understandable. However, we find no basis in the present rules for the courts to make such an interpretation. Moreover, a good rule works both ways. The problem arises more frequently when affidavits alone are used as the basis for the hearing on the motion for new trial.[11]

Appellant does not point out how he was harmed or prejudiced by the admission and consideration of the State's affidavits. The trial court did not abuse its discretion in admitting and considering such evidence. The fourth point of error is overruled.

## FAILURE TO FOLLOW PLEA AGREEMENT

In point of error five, appellant asserts:

The trial court erroneously failed to follow the plea agreement entered in this case because the appellant did not minimize his guilt in the PSI at the March 2006 sentencing hearing or because the trial court accepted the plea agreement for deferred adjudication when saying at the plea hearing, "Mr. Pye, I accept your plea. I find the evidence substantiates your guilt, but I do not find you guilty at this time," language indicating a deferral of adjudication of guilt and acceptance of the plea.

The point of error is multifarious and risks rejection on that basis, but we will address it. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990). We shall, however, consider the two contentions in reverse order.

---

[11] For a discussion of the use of affidavits in hearings on motions for new trial, *see Charles v. State*, 146 S.W.3d 204, 210 (Tex. Crim. App. 2004); *Manzi v. State*, 88 S.W.3d 240, 250-55 (Tex. Crim. App. 2002) (Cochran, J., concurring).

Deferred adjudication community supervision (neé probation) is provided for by statute. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(a) (West Supp. 2008).[12] The essence of deferred adjudication community supervision is that the defendant is placed on community supervision without a finding of guilt and without being convicted of any offense. *See McNew v. State*, 608 S.W.2d 166, 172 (Tex. Crim. App. 1978); *see also Ex parte Schillings*, 641 S.W.2d 538, 540 (Tex. Crim. App. 1982); *Triplett v. State*, 686 S.W.2d 342, 345 (Tex. App.—Houston [1st Dist.] 1985, pet. ref'd).

Professors Dix and Dawson have described the procedure normally followed:

> The statue requires that if the trial court wishes to grant deferred adjudication community supervision, it must do so "without entering an adjudication of guilt." * * * This refers to the entry of a finding of guilt in the judgment filed in the case. The trial court is empowered to receive a plea of guilty with substantiating evidence, orally find the defendant to be guilty of the offense to which he plead guilty, recess the proceedings for a presentence investigation report, and at the recessed setting grant deferred adjudication community supervision. So long as the finding of guilt is not entered in the judgment before the court attempts to grant deferred adjudication, it is not precluded from doing so by an oral finding of guilt.

43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 39.52 (2d ed. 2002) (citations omitted). The procedure described has reference to the statutory provision for presentence reports. Tex. Code Crim. Proc. Ann. art. 42.12, § 9(a) (West Supp. 2008).

---

[12] Article 42.12, section 5(a) provides:

> (a) Except as provided by subsection (d) of this section, when in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision.

28

Trial courts have wide discretion in determining whether or not to accept a plea bargain agreement. *State ex rel Bryan v. McDonald*, 662 S.W.2d 5, 9 (Tex. Crim. App. 1983); *Wright v. State*, 158 S.W.3d 590, 593 (Tex. App.—San Antonio 2005, pet. ref'd). A trial court is free to accept or reject a plea bargain agreement. Until the court accepts it, a negotiated plea bargain agreement is not binding on the parties. *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996); *Holland v. State*, 112 S.W.3d 251, 254-55 (Tex. App.—Austin 2003, no pet.). Once expressly approved by the trial court in open court, however, a plea bargain agreement becomes a binding contractual arrangement between the State and the defendant. *Ortiz*, 933 S.W.2d at 104; *Wright*, 158 S.W.3d at 593-94. Under such circumstances, the trial court is bound to carry out the terms of the agreement. *Holland*, 112 S.W.3d at 255. If the trial court rejects the plea bargain agreement, the defendant's plea is rendered involuntary and the defendant is entitled to withdraw the guilty plea. *Id*. (citing *Zinn v. State*, 35 S.W.3d 283, 285 (Tex. App.—Corpus Christi 2000, pet. ref'd)).

Here, the trial court was not bound by the plea bargain agreement as contended. During the guilty plea proceedings on February 6, 2006, the trial court stated to appellant: "I cannot tell what conditions of probation would be imposed *if I go along with this agreement* because a Presentence investigation must be completed and a report filed with the Court." (Emphasis added.) Later, the trial court stated: "I accept your plea. I find the evidence substantiates your guilt, but *I do not find you guilty at this time*." (Emphasis added.) A trial court's statement that, "I accept the plea," does not mean the trial court has accepted the terms of the plea agreement. *Ortiz*,

933 S.W.2d at 104. The trial court carefully followed procedure to avoid being bound by a plea bargain agreement. Appellant's reliance upon the *Wright* opinion is misplaced.[13]

Next, we also reject the claim that the trial court erred in failing to approve the plea bargain agreement on the basis that appellant did not minimize his guilt in the presentence report and at the recessed hearing on March 23, 2006. The presentence report and the record of the hearing are contrary to appellant's claim, which he does not support by argument or reference to the record. The fifth point of error is overruled.

The judgment of conviction is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Jones, Justices Henson and Onion*

Affirmed

Filed: February 27, 2009

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).

_____

[13] *Wright v. State*, 158 S.W.3d 590 (Tex. App.—San Antonio 2005, pet. ref'd) is distinguishable from the instant case on the law and the facts. It involved three judges. The first, a visiting judge, affirmatively approved in open court the plea bargain agreement before proceeding to accept the defendant's nolo contendere plea. *Id.* at 594. Once expressly approved by a trial court in open court, the plea bargain agreement is a binding contract between the State and the defendant. *See Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996).